STATE OF NORTH CAROLINA v. WILLIAM THOMAS McCALLUM

No. COA07-527

(Filed 18 December 2007)

## 1. Criminal Law— prosecutor's comments—defendant's closing argument—supporting evidence

The trial court did not err by denying defendant's motion for a mistrial based upon the prosecutor's comments during defense counsel's closing arguments. The prosecutor's comments referred only to defendant's failure to present evidence to support his claim of a false confession, not to defendant's failure to testify.

## 2. Robbery— indictment—allegations of value—surplusage

The trial court did not err in a prosecution for armed robbery by permitting the State to amend the indictments to remove the allegations concerning the amount of money taken. The allegations of value were merely surplusage.

STATE v. McCALLUM

[187 N.C. App. 628 (2007)]

**3. Criminal Law— continuance denied—changed indictments**

The trial court did not abuse its discretion by denying defendant's motion for a continuance after the court allowed the State to amend the indictments. The amendments did not constitute substantial alterations and defendant had timely notice of the charges against him.

**4. Criminal Law— testimony about unrelated crime—mistrial denied**

The trial court did not err by failing to declare a mistrial after a detective testified about defendant's statement concerning an unrelated robbery. The court instructed the jury to disregard the statement, and defendant did not demonstrate that the statement had any impact on the trial.

**5. Criminal Law— juror allegedly sleeping—mistrial denied**

The trial court did not abuse its discretion in an armed robbery prosecution by not granting a mistrial after a juror allegedly fell asleep. Based on the juror's responses, statements by counsel, and the court's own observations, the court determined that the juror had not been asleep. Furthermore, the evidence presented while the juror was allegedly asleep was not critical to either defendant or the State.

Appeal by defendant from judgments entered 3 May 2006 by Judge Robert F. Floyd, Jr. in Robeson County Superior Court. Heard in the Court of Appeals 15 November 2007.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Daniel D. Addison, for the State.*

*Sofie W. Hosford, for defendant-appellant.*

JACKSON, Judge.

William Thomas McCallum ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of five counts of robbery with a dangerous weapon and five counts of conspiracy to commit robbery with a dangerous weapon. For the following reasons, we hold no error.

The State presented evidence of five separate armed robberies of different convenience stores occurring over a span of approximately four weeks. Defendant admitted to participating in each rob-

bery and volunteered details of the robberies with little or no prompting by the police.

First, Gilford Locklear, Jr. ("Gilford Locklear"), a cashier at the Graceland Food Mart convenience store ("the Graceland store"), testified that at approximately 9:30 p.m. on 26 March 2004, he was sitting at the register and talking to the stock person and a regular customer when two tall black males entered the store. Both men had their faces covered, with the taller of the two concealing his face with a bandana; Gilford Locklear was unable to determine what the shorter man was using to conceal his face. The shorter of the two men was carrying a handgun, and after pointing the gun at Gilford Locklear, the man ordered the stock person and customer to the floor. Meanwhile, the taller man took money out of the register and demanded cigarettes. The two men left after approximately two minutes, at which point Gilford Locklear pressed the panic button, locked the door, and called the police.

Defendant later admitted to the police that he participated in the robbery of the Graceland store. He explained in both an interview and a written statement that he was at the home of his cousin, Dellery Moore ("Moore"), when Moore and Derrick Vaught ("Vaught") discussed robbing a store. Defendant drove Moore and Vaught in his Cadillac to the Graceland store. Defendant stated that he did not want to go inside. Moore and Vaught went inside and robbed the store, and the three of them later split the proceeds, with defendant receiving $100.00 for driving.

The next armed robbery occurred on 31 March 2004 at the Community Stop Number 4 convenience store ("the Community Stop store"). Kellie Thompson ("Thompson"), the store clerk, testified that two black males entered the Community Stop store at approximately 9:30 p.m. One of the men was carrying a shotgun and had a yellow bandana covering his face. He put the shotgun in Thompson's face and demanded money. Thompson emptied the cash register and helped put the money into a bag. Thompson pushed the panic button, and after the men left the store, Thompson called the police. Thompson estimated that between $280.00 and $300.00 was stolen from the register.

Defendant admitted to the police that on the evening of 31 March 2004, he was with Moore and Vaught in Vaught's automobile, with Moore driving. This time, defendant entered the store, carrying a shotgun. Defendant held the gun while Vaught took the money. After

leaving the Community Stop store and returning to Vaught's house, the three men split the money taken during the robbery.

On 5 April 2004, at approximately 10:30 p.m., Lisa Jones ("Jones") and Jerry Russ ("Russ") were working at the Sun-Do Magnolia BP convenience store ("the Sun-Do Magnolia store"). Jones, the cashier, and Russ, the stock person, were cleaning the store when two black males entered, one wearing a yellow bandana and the other wearing a stocking on his head. One of the men put a gun to Jones' head and demanded money; Russ, meanwhile, was cleaning a restroom in the back of the store. Jones took the money out of the register and was instructed to place it inside of a bag; she also gave the man the money she had set aside for the morning shift. Russ came out of the bathroom, and after being seen by the taller man, locked himself inside a storage room. After the men left, Russ called the police and the store manager.

Once again, defendant admitted his participation to the police, stating that he was with Vaught and Moore when Vaught began talking about robbing a store. The three men drove in defendant's automobile to the Sun-Do Magnolia store, and defendant dropped off Vaught and Moore outside. Defendant waited in the vehicle during the robbery, and afterwards, defendant drove Vaught and Moore back to Vaught's house, where the three men split the money.

On 12 April 2004, Paula K. Lovett ("Lovett") and James D. Locklear ("James Locklear") were working at the Sun-Do Kwik Stop BP convenience store ("the Kwik Stop store") as the cashier and stock person, respectively. At approximately 9:00 p.m., two tall black males, wearing hats and scarves, entered the Kwik Stop store, pointed a gun at Lovett, and demanded money. Lovett gave them all the money in both the cash register and the cabinet below the cash register. Lovett described one of the men as approximately six feet, two inches tall, wearing a tan bandana over his face, and she described the other as approximately five feet, nine inches tall, wearing a white bandana over his face. James Locklear described one of the men as heavy set and the other as short, and stated that both were wearing masks over their faces.

Larry Haywood ("Haywood"), a nearby resident, saw a Cadillac drive onto his street near the Kwik Stop store. Haywood watched as the car parked, and a few minutes later, observed two black males running through a field and hopping in the car, which then quickly departed. Roger Jones ("Jones"), who also lived near the Kwik Stop

store, observed a Cadillac parked next to his house. Jones saw a black male sitting in the back seat and asked him why he was in Jones' yard. The passenger stated that he had run out of gas. Jones began walking toward the Kwik Stop store, when two other black males ran past him. Jones testified that one was tall and the other was short.

Defendant admitted to the police to participating in the 12 April 2004 robbery of the Kwik Stop store. Defendant stated that he was with Moore that evening, and that Moore was driving defendant's Cadillac. Moore parked in a yard behind the store, and Moore and defendant went inside the store. Defendant stated that although he participated in the robbery, Moore held the gun and took the money.

The fifth robbery occurred on 20 April 2004 at the Sun-Do Kwik Stop convenience store in Allenton ("the Allenton store"). Emily Covey ("Covey"), the store clerk, testified that at approximately 10:00 p.m., two young black males ran into the store and pointed a gun at her and her co-worker. The gunman had a gray hood over his face and demanded that Covey give him money from the cash register. After Covey gave him the money from the register, the gunman demanded money from a cigar box on the counter. Covey showed the man that the box was empty, and the two men left the store. Covey and her co-worker observed the automobile in which the robbers left, noting the make and model of the vehicle as well as its license plate number.

Defendant admitted to the police that on 20 April 2004, he went to the Allenton store, along with Moore and Vaught, and "checked it out so [they] could come back and rob it later." They returned thirty minutes later in Vaught's automobile, and Moore was armed with Vaught's pistol. Moore and defendant entered the store, and Moore held the gun while defendant took the money. Vaught, Moore, and defendant drove back to Vaught's house, where they split the money.

After the police traced the automobile used on 20 April 2004 to Moore and Vaught, both men were arrested. On 13 May 2004, defendant turned himself in to the police, and on 9 August 2004, defendant was indicted for five counts of robbery with a firearm and five counts of conspiracy to commit robbery with a firearm. A jury found defendant guilty on all counts, and the trial court sentenced defendant to five consecutive terms of sixty-four to eighty-six months imprisonment. Defendant gave timely notice of appeal.

STATE v. McCALLUM

[187 N.C. App. 628 (2007)]

[1] In his first argument, defendant contends that the trial court erred in denying his motion for a mistrial based upon comments made by the prosecutor during defense counsel's closing arguments. We disagree.

The standard of review from the denial of a motion for mistrial is abuse of discretion. *See State v. Gilbert*, 139 N.C. App. 657, 672, 535 S.E.2d 94, 102 (2000). " 'An abuse of discretion occurs only upon a showing that the judge's ruling was so arbitrary that it could not have been the result of a reasoned decision.' " *Id.* (quoting *State v. Dial*, 122 N.C. App. 298, 308, 470 S.E.2d 84, 91, *disc. rev. and cert. denied*, 343 N.C. 754, 473 S.E.2d 620 (1996)).

The following exchange took place during defense counsel's closing argument:

[DEFENSE COUNSEL]: Reasonable doubt. That's why I say, ladies and gentlemen, when you look at those statements, there's something the state calls false confession, something—

[PROSECUTOR]: Objection, Your Honor, we need to be heard.

THE COURT: Sustained.

[PROSECUTOR]: Your Honor, we would request an instruction to the jury since the defendant did not put on any evidence—

[DEFENSE COUNSEL]: Objection.

[PROSECUTOR]: —as to such thing as a false confession.

THE COURT: Let me see counsel.

Following an off-the-record bench conference, the trial court sustained the objection and instructed defense counsel to continue with his closing argument.

Our Supreme Court has explained that "[a] statement that may be interpreted as commenting on a defendant's decision not to testify is improper if the jury would naturally and necessarily understand the statement to be a comment on the failure of the accused to testify." *State v. Mitchell*, 353 N.C. 309, 326, 543 S.E.2d 830, 840-41, *cert. denied*, 534 U.S. 1000, 151 L. Ed. 2d 389 (2001). Here, defendant contends that "[t]he prosecutor's comment apparently referred to the fact that [defendant] did not present any evidence to support his claim that his statements were false. This was a direct comment on his failure to testify . . . ." Contrary to defendant's contention, however, the

prosecutor's statement was not a direct comment on defendant's failure to testify because there are various methods, other than testimony by a defendant, by which a defendant may attempt to prove that he made a false confession. Specifically, defendant could have presented testimony—lay or expert—as to his mental state,[1] and it is possible that he could have presented physical or documentary evidence, such as evidence of intoxication, concerning his mental state at the time of his confessions.[2] Here, the prosecutor's comments referred only to defendant's failure to present evidence to support his claim of a false confession, not to defendant's failure to testify. *Compare Ben-Yisrayl v. Davis*, 431 F.3d 1043, 1049 (7th Cir. 2005) (noting that the prosecutor improperly stated in closing arguments, "Let the Defendant tell you why somebody would freely and voluntarily confess," and holding that the prosecutor's comments did not constitute harmless error), *reh'g en banc denied*, No. 03-3169, 2006 U.S. App. LEXIS 2454 (7th Cir. 2006). Accordingly, defendant's assignment of error is overruled.

[2] Defendant next contends that the trial court erred in permitting the State to amend the indictments to remove the allegations concerning the amount of money taken during the robberies. Specifically, defendant contends that the amendments constituted substantial alterations of the indictments. We disagree.

A criminal bill of indictment is sufficient "if it express[es] the charge against the defendant in a plain, intelligible, and explicit manner." N.C. Gen. Stat. § 15-153 (2005). "Specifically, the indictment must allege all of the essential elements of the crime sought to be charged." *State v. Westbrooks*, 345 N.C. 43, 57, 478 S.E.2d 483, 492 (1996). North Carolina General Statutes, section 15A-923(e) provides

---

1. *See, e.g., Shellenberger v. State*, 150 N.W. 643, 645 (Neb. 1915) ("For the defense, one group of witnesses was called to prove that defendant was weak-minded, or defective mentally, and that he had a mania or predisposition to make false confessions that he was implicated in serious crimes."); *State v. Romero*, 81 P.3d 714, 716 n.1 (Ore. Ct. App. 2003) (noting that "[expert] testimony has been offered in an effort to demonstrate that some police interrogation techniques produce false confessions."), *disc. rev. denied*, 95 P.3d 729 (Or. 2004).

2. *Cf. Townsend v. Sain*, 372 U.S. 293, 308 n.5, 9 L. Ed. 2d 770, 783 (1963) ("Unfortunately, persons under the influence of drugs are very suggestible and may confess to crimes which they have not committed." (internal quotation marks and citation omitted)), *overruled in part on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1, 118 L. Ed. 2d 318 (1992); *Pecoraro v. Walls*, 286 F.3d 439, 446 (7th Cir.) (acknowledging that persons under the influence of drugs or alcohol may be more likely to falsely confess, but noting that there is little evidence of substance-induced false confessions), *cert. denied*, 537 U.S. 956, 154 L. Ed. 2d 306 (2002).

that "[a] bill of indictment may not be amended." N.C. Gen. Stat. § 15A-923(e) (2005). This provision has been interpreted to mean that "a bill of indictment may not be amended in a manner that substantially alters the charged offense." *State v. Silas*, 360 N.C. 377, 380, 627 S.E.2d 604, 606 (2006). A "non-essential variance is not fatal to the charged offense," and any "averment unnecessary to charge the offense . . . may be disregarded as inconsequential surplusage." *State v. Grady*, 136 N.C. App. 394, 396-97, 524 S.E.2d 75, 77, *appeal dismissed and disc. rev. denied*, 352 N.C. 152, 544 S.E.2d 232 (2000). Therefore, " '[a]llegations [added to, deleted from, or modified in an indictment] beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage.' " *Westbrooks*, 345 N.C. at 57, 478 S.E.2d at 492 (alterations added) (quoting *State v. Taylor*, 280 N.C. 273, 276, 185 S.E.2d 677, 680 (1972)). Ultimately, "[i]n determining whether an amendment is a substantial alteration, we must consider the multiple purposes served by indictments, the primary one being 'to enable the accused to prepare for trial.' " *Silas*, 360 N.C. at 380, 627 S.E.2d at 606 (quoting *State v. Hunt*, 357 N.C. 257, 267, 582 S.E.2d 593, 600 (2003)).

In the instant case, the State moved on the day of trial to remove from the indictments the value of property purportedly taken during the robberies. The trial court granted the State's motion, and the amendments left four of the indictments alleging that defendant took an unspecified amount of "U.S. Currency."[3]

Although defendant contends that this amendment constituted a substantial alteration, the State correctly argues that the allegation of the value of the property constituted mere surplusage. Defendant was indicted for robbery with a firearm, and the essential elements of this offense "are (1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of firearms or other dangerous weapon, implement or means; and (3) danger or threat to the life of the victim." *State v. Joyner*, 295 N.C. 55, 63, 243 S.E.2d 367, 373 (1978) (internal quotation marks omitted). It is well-established that "[i]n an indictment for armed robbery, 'the kind and value of the property taken is not material.' " *State v. Oliver*, 334 N.C. 513, 526, 434 S.E.2d 202, 208 (1993) (quoting *State v. Guffey*, 265 N.C. 331, 333, 144 S.E.2d 14, 16 (1965)). Therefore, the amendments to the indictments did not constitute substantial alterations,

---

3. The indictment in 04 CRS 53240 still alleged that defendant took "five hundred dollars in United States currency" and "checks totaling five hundred dollars." Only the total value of property taken from the Graceland store—*i.e.*, $1,021.00—was redacted.

and defendant properly was indicted for and convicted of robbery with a firearm. *See State v. Estes,* 186 N.C. App. 364, 372, 651 S.E.2d 598, 603 (2007) (finding no substantial alteration and noting that "[d]efendant had timely notice of the charges brought against him to enable him to adequately prepare his defense for trial. Defendant was not convicted of a crime different from that alleged in the bill of indictment." (internal citation omitted)). Accordingly, defendant's assignment of error is overruled.

[3] In his next argument, defendant contends that the trial court erred in denying his motion for continuance after the court allowed the State's motion to amend the indictments. We disagree.

"[A] motion for continuance is ordinarily addressed to the sound discretion of the trial court. In such cases, the trial court's ruling will not be disturbed unless it is manifestly unsupported by reason, which is to say it is so arbitrary that it could not have been the result of a reasoned decision." *State v. T.D.R.,* 347 N.C. 489, 503, 495 S.E.2d 700, 708 (1998). As discussed *supra,* the amendments to the indictments did not constitute substantial alterations. Since defendant had timely notice of the charges against him, the trial court did not abuse its discretion in denying defendant's motion to continue. Accordingly, defendant's assignment of error is overruled.

[4] Defendant next argues that the trial court erred in failing to declare a mistrial after Detective Terry Parker ("Detective Parker") testified before the jury about defendant's statement concerning an unrelated robbery. We disagree.

On direct examination, Detective Parker of the Lumberton Police Department read from a written statement taken from defendant concerning defendant's involvement in the five robberies. After reading defendant's statements with respect to three of the five robberies, Detective Parker read defendant's statement concerning an unrelated robbery: "On another night I was with Carry [defendant's cousin] who helped me rob the St. Pauls Sun-Do. Vaught was also with me." Defense counsel objected because this robbery was not one of the robberies for which defendant had been indicted. After a discussion with counsel outside the presence of the jury, the trial court ruled that Detective Parker's testimony as to the portion of defendant's statement concerning the St. Paul's robbery was inadmissible pursuant to Rule 404(b) of the North Carolina Rules of Evidence. The trial court denied defense counsel's motion for a mistrial, but instructed the jury "to disregard the last statement, or answer, given by this witness."

Defendant contends that the trial court's instruction was insufficient to cure the error and that the statement substantially and irreparably prejudiced defendant. Specifically, defendant argues that if the jury "believed that he was responsible for yet another robbery, [the jury] might tend to believe he committed all of these crimes."

Contrary to defendant's contention, defendant has failed to demonstrate that the statement read by Detective Parker had any impact on the trial. The trial court instructed the jury to disregard the statement, and "our legal system through trial by jury operates on the assumption that a jury is composed of men and women of sufficient intelligence to comply with the court's instructions and they are presumed to have done so." *State v. Glover*, 77 N.C. App. 418, 421, 335 S.E.2d 86, 88 (1985). As our Supreme Court has explained, "[w]hen the trial court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured." *State v. Black*, 328 N.C. 191, 200, 400 S.E.2d 398, 404 (1991). In *Black*, a detective read from a statement of the defendant's girlfriend, "part of which indicated that the defendant had been involved with drugs in the past." *Id.* at 199-200, 400 S.E.2d at 403. The defendant objected, and the trial court sustained the objection and instructed the jury to disregard the statement. The trial court, however, refused to declare a mistrial, and our Supreme Court found that "[t]he trial court did not abuse its discretion by denying the defendant's motion for a mistrial." *Id.* at 200, 400 S.E.2d at 404.

Similarly, in the case *sub judice*, Detective Parker's statement concerning an unrelated robbery may have been inadmissible, but there is no indication that the statement prejudiced defendant. "Whether instructions can cure the prejudicial effect of such statements must depend in large measure upon the nature of the evidence and the particular circumstances of the individual case." *State v. Hunt*, 287 N.C. 360, 375, 215 S.E.2d 40, 49 (1975). Here, defendant admitted to participating in each of the five armed robberies, and it is unreasonable to conclude that Detective Parker's testimony concerning a sixth robbery, particularly after the trial court instructed the jury to disregard the testimony, could have had an impact on the outcome of defendant's trial. Accordingly, defendant's assignment of error is overruled.

[5] Finally, defendant contends that the trial court abused its discretion in denying his motion for mistrial after one of the jurors allegedly fell asleep during the trial. We disagree.

During the State's direct examination of Vernon Johnson, defense counsel called to the trial judge's attention the condition of juror number six. The trial judge asked the juror, "[A]re you all right, sir?" The juror responded, "Yeah," and the judge asked him if he needed a break. Juror number six replied, "No, I'm steady." The State continued presenting its evidence, and after the jury was excused for a morning break, the trial judge asked the attorneys if they wished to address the matter involving juror number six. Defense counsel stated that he believed that the juror had been asleep for two or three minutes and that he heard the juror snoring. The trial judge responded that he had been observing the jury regularly and stated, "I don't think it could have been two or three minutes because I just looked at the jury within less than a minute prior to that." The judge stated that he observed that the juror had been leaning over at the time but did not appear to be asleep. The prosecutor stated that she did not hear any snoring and noted that when the juror was called by the court, he immediately responded. Defense counsel requested that the juror be removed and moved for a mistrial. The trial judge indicated to counsel that he would make further inquiry of the juror, but after further consideration during recess, the judge explained that he would not make any additional inquiry as to juror number six and denied defendant's motion for a mistrial.

On appeal, defendant contends that because juror number six appeared to have fallen asleep, his right to be tried by a jury of twelve persons was violated. *See State v. Hudson*, 280 N.C. 74, 79, 185 S.E.2d 189, 192 (1971). It is well-established that

> "[t]he trial court's discretion in supervising the jury continues beyond jury selection and extends to decisions to excuse a juror and substitute an alternate. These kinds of decisions relating to the competency and service of jurors are not reviewable on appeal absent a showing of abuse of discretion, or some imputed legal error."

*State v. Lovin*, 339 N.C. 695, 715-16, 454 S.E.2d 229, 241 (1995) (quoting *State v. Davis*, 325 N.C. 607, 628, 386 S.E.2d 418, 429 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990)).

Much as in *Lovin*, there was a showing in the instant case "that a juror might have been inattentive to parts of the case, but the . . . observations of the court support the conclusion that the juror could perform his duties." *Id.* at 716, 454 S.E.2d at 241. The trial court inquired of the juror, and based upon the juror's response, statements

IN RE R.B.B.

[187 N.C. App. 639 (2007)]

by counsel, and the court's own observations of the juror, the trial court determined that the juror had not been asleep. Furthermore, a trial court must declare a mistrial only when a defendant has been substantially or irreparably prejudiced, and in the instant case, defendant has failed to explain how he was prejudiced. In fact, as the trial court noted on the record, the evidence presented while juror number six allegedly was asleep was foundational in nature and was not critical to either defendant or the State. Accordingly, defendant's assignment of error is overruled.

Defendant has failed to present arguments with respect to assignments of error numbers 1, 2, 3, 6, 9, 10, 12, and 13. Accordingly, these assignments of error are deemed abandoned. *See* N.C. R. App. P. 28(b)(6) (2006).

No Error.

Judges TYSON and STROUD concur.