**STATE v. KING**

[227 N.C. App. 390 (2013)]

STATE OF NORTH CAROLINA
v.
MICHAEL LEON KING, Defendant

No. COA12-1275

Filed 21 May 2013

1. **Pretrial Proceedings—continuance to procure expert— denied—defendant's inactivity**

    The trial court did not abuse its discretion in a first-degree murder prosecution by denying defendant's motion to continue to permit him to procure a DNA expert. Defendant had sufficient time to review the evidence against him and to procure the assistance of an expert, but simply failed to do so in time.

2. **Constitutional Law—effective assistance of counsel—record not sufficient**

    Defendant's assertion that he received ineffective assistance of counsel was dismissed without prejudice to his ability to raise the challenge through a motion for appropriate relief where the record was not adequate to address the issue.

3. **Criminal Law—requested instruction denied—credibility of witness**

    There was no error in a first-degree murder prosecution where the trial court refused to instruct the jury using defendant's proposed special instruction concerning the effect of drug use on a witness's credibility. The trial court properly instructed the jury using the general witness credibility instruction, defendant made it clear on cross-examination that the witness had been smoking marijuana before the masked perpetrators entered the apartment, and defendant argued in closing that the witness could not be believed.

    Appeal by defendant from judgment entered 17 April 2012 by Judge Yvonne Mims Evans in Superior Court, Mecklenburg County. Heard in the Court of Appeals 24 April 2013.

    *Attorney General Roy A. Cooper, III by Special Deputy Attorney General Jill Ledford Cheek, for the State.*

    *Appellate Defender Staples S. Hughes by Assistant Appellate Defender Paul M. Green, for defendant-appellant.*

STROUD, Judge.

Michael King ("defendant") appeals from a judgment entered 17 April 2012 in Superior Court, Mecklenburg County, after a jury found him guilty of one count of first-degree murder. Defendant argues on appeal that the trial court abused its discretion and violated his constitutional right to the effective assistance of counsel by denying his motion to continue. Defendant further contends that the trial court erred in refusing to instruct the jury using a special instruction concerning the credibility of drug abusers. For the following reasons, we find no error.

## I. Introduction

Defendant was indicted in Mecklenburg County for murder in the first degree on 8 March 2010. Defendant pled not guilty and proceeded to jury trial. At trial, the State's evidence tended to show the following:

On 24 January 2010, defendant and several others, including Jamal Pittman and Jacob Case, agreed to rob Jared Bolli, who Mr. Case knew would have marijuana and cash in a safe in his apartment. Defendant, Mr. Case, Mr. Pittman, and either two or three others, met at an apartment complex and all got into Mr. Pittman's red minivan. Two of them brought weapons, one a .22 caliber rifle and the other a revolver. Defendant was carrying the rifle. All of them rode together to Mr. Bolli's apartment complex.

When they arrived at Mr. Bolli's apartment, Mr. Case went to the door, knocked, and was let in, as Mr. Bolli knew him. At the time, several people were in Mr. Bolli's apartment smoking marijuana, including Amanda Driver. Defendant and three others hid out of sight of the doorway and put ski masks on. One kept a lookout on the breezeway. After a couple minutes, the four masked individuals burst into the apartment. The two with weapons brandished them at the apartment's occupants and separated them into different groups. The one with the rifle, who Ms. Driver testified had a tattoo of the word "King" on his arm, took Mr. Bolli and demanded to know where the marijuana and money were. After showing the gunman the safe where he kept the marijuana and money, Mr. Bolli leaned over and reached for a weight near his exercise bench. The man with the rifle saw him leaning over to get the weight, said "Hell, no," and shot Mr. Bolli in the head at close range. All of the robbers fled after Mr. Bolli was shot and ran back to Mr. Pittman's minivan. Mr. Bolli was pronounced dead when emergency medical personnel arrived on the scene.

Although the State mostly relied on the testimony of defendant's co-conspirators and the witnesses in Mr. Bolli's apartment, it also

introduced physical evidence. Specifically, it introduced the testimony and report of a State Bureau of Investigation (SBI) analyst who found mixtures of DNA on the steering wheel of the red minivan, as well as in several gloves, a ski mask, and the black safe stolen from Mr. Bolli's apartment, all of which were found either in Mr. Pittman's red minivan or in his apartment. In some of the mixtures, defendant could not be excluded as a contributor, and in others, the SBI analyst concluded his DNA matched. Defendant presented alibi evidence in his defense, but did not present any expert testimony to counter the DNA evidence.

After the close of all evidence, the jury returned a verdict of guilty as to first-degree murder. The trial court sentenced defendant to life imprisonment. After sentencing, defendant gave notice of appeal in open court.

## II. Motion to Continue

**[1]** Defendant argues that the trial court abused its discretion in denying his motion to continue to permit him to procure an expert witness to evaluate and testify in regard to the State's DNA evidence. He further argues that in denying his motion to continue, the trial court violated his right to the effective assistance of counsel.

The State provided discovery, including all of the reports and data generated by the SBI around 9 June 2011. The State produced one of the reports concerning the DNA analysis in hard copy and included a second report on a CD containing voluminous other material. Defense counsel did not carefully examine the material on the CD until around 5 March 2012, when he e-mailed the prosecutor and asked if he had missed anything. The prosecutor informed him that there was a second DNA report on the CD.

The parties had agreed to a trial date of 9 April 2012. After conferring with Dr. Ronald Ostrowski, a DNA expert, defendant filed a motion to continue on 16 March 2012. The trial court held a hearing on the motion. At the hearing, defense counsel explained his oversight and Dr. Ostrowski stated that he would need approximately three to four months to review the material and prepare for trial. The trial court denied defendant's motion to continue.

"A motion for a continuance is ordinarily addressed to the sound discretion of the trial court, and the ruling will not be disturbed absent a showing of abuse of discretion." *State v. Williams*, 355 N.C. 501, 540, 565 S.E.2d 609, 632 (2002) (citation and quotation marks omitted), *cert. denied*, 537 U.S. 1125, 154 L.Ed. 2d 808 (2003). "An abuse of discretion occurs only upon a showing that the judge's ruling was so arbitrary

that it could not have been the result of a reasoned decision." *State v. McCallum*, 187 N.C. App. 628, 633, 653 S.E.2d 915, 919 (2007) (citation and quotation marks omitted).

> When a motion to continue raises a constitutional issue, however, the trial court's ruling thereon involves a question of law that is fully reviewable on appeal by examination of the particular circumstances presented in the record. Even when the motion raises a constitutional issue, denial of the motion is grounds for a new trial only upon a showing that the denial was erroneous and also that defendant was prejudiced as a result of the error.

*Williams*, 355 N.C. at 540, 565 S.E.2d at 632 (citation, quotation marks, and brackets omitted).

Here, defendant's written motion specifically cited Article I, §§ 19 and 23 of the North Carolina Constitution and expressed concern that defendant would not receive effective assistance of counsel if the motion were not granted. Ineffective assistance of counsel will be presumed "without inquiry into the actual conduct of the trial when the likelihood that any lawyer, even a fully competent one, could provide effective assistance is remote." *State v. Morgan*, 359 N.C. 131, 143-44, 604 S.E.2d 886, 894 (2004), *cert. denied*, 546 U.S. 830, 163 L.Ed. 2d 79 (2005).

> To establish a constitutional violation, a defendant must show that he did not have ample time to confer with counsel and to investigate, prepare and present his defense. To demonstrate that the time allowed was inadequate, the defendant must show how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion.

*Williams*, 355 N.C. at 540-41, 565 S.E.2d at 632 (citations and quotation marks omitted).

> In determining whether a trial court erred in denying a motion to continue, we have considered the following factors: (1) the diligence of the defendant in preparing for trial and requesting the continuance, (2) the detail and effort with which the defendant communicates to the court the expected evidence or testimony, (3) the materiality of the expected evidence to the defendant's case, and (4) the gravity of the harm defendant might suffer as a result of a denial of the continuance.

*State v. Wright,* 210 N.C. App. 52, 60, 708 S.E.2d 112, 119 (citation and quotation marks omitted), *disc. rev. denied,* 365 N.C. 200, 710 S.E.2d 9 (2011). Where such factors are present, our appellate courts have "found either an abuse of discretion or constitutional error in denying a continuance." *State v. Roper,* 328 N.C. 337, 352, 402 S.E.2d at 600, 609, *cert. denied,* 502 U.S. 902, 116 L.Ed. 2d 232 (1991).

Here, defendant informed the trial court specifically why Dr. Ostrowski was needed and how much time he would need to review the evidence. Nevertheless, the first factor—the diligence of defendant's preparation—weighs heavily in favor of the State's position. This case is not one in which no competent lawyer could have provided effective assistance or where defendant had inadequate time to prepare – defendant's trial counsel admitted he had simply overlooked the previously disclosed DNA report as it was on a CD with voluminous data from the SBI received during the summer of 2011.[1] It appears that the same attorney represented him for over a year before trial. There was no evidence that the State had violated discovery rules. Had trial counsel properly examined the CD and found the report sometime in the months between summer 2011 and March 2012, he likely could have procured the assistance of Dr. Ostrowski or another DNA expert in time for trial in April. Thus, defendant had sufficient time to review the evidence against him and to procure the assistance of an expert, but simply failed to do so in time.

Defendant cites our opinion in *State v. Barlowe,* 157 N.C. App. 249, 578 S.E.2d 660, *disc. rev. denied,* 357 N.C. 462, 586 S.E.2d 100 (2003), to support his argument. In *Barlowe,* we concluded that "the denial of defendant's motion to continue in this case was error and violated her constitutional rights to confront her accusers, to effective assistance of counsel, and to due process of law." *Barlowe,* 157 N.C. App. at 257, 578 S.E.2d at 665. In that case, the State delivered to the defense counsel an analyst's draft report relating to evidence of blood stained pants approximately three weeks before trial and the final report nine days before trial. *Id.* at 255-57, 578 S.E.2d at 664-65. The defendant's trial counsel contacted various experts, but "none of the experts contacted by her counsel would have been available for trial even if they had been

---

1. Defendant argues that the State violated a local practice by providing the report in a digital format, rather than having printed the full report. There was no evidence of such a local practice. At the hearing on the motion to continue, Defendant's trial counsel merely stated that in the few cases he had handled where DNA evidence was involved, the crime lab gave him the reports in a hard copy, not that there was an established local practice to that effect.

contacted immediately upon defendant's receipt of the [draft] report." *Id.* at 257, 578 S.E.2d at 665.

*Barlowe* is distinguishable from the present case. Unlike in *Barlowe*, defendant had over nine months after he received the SBI lab report in which to examine the evidence and procure an expert witness. Had the trial counsel been aware of the report and contacted Dr. Ostrowski before January 2012, he likely could have procured Dr. Ostrowski's help at trial.

The question in this context is whether defendant had "ample time to confer with counsel and to investigate, prepare and present his defense," *Williams*, 355 N.C. at 540, 565 S.E.2d at 632 (citation and quotation marks omitted), not whether the trial counsel properly used the time given to adequately investigate and prepare—that question is considered under the normal test for ineffective assistance of counsel. Although the trial court might have justifiably granted defendant's motion and could have avoided a potential question of ineffective assistance of counsel by doing so, we cannot say that where defendant had been provided the DNA report nearly a year before trial the trial court erred or violated defendant's constitutional rights in denying his motion to continue in order to secure an expert witness for trial.

**[2]** Defendant also asserts that he received ineffective assistance of counsel, but we dismiss this argument without prejudice to his ability to raise this challenge through a motion for appropriate relief. The record presently before us is inadequate to assess whether defendant suffered prejudice from his trial counsel's failure to timely review the evidence. *See State v. Thompson*, 359 N.C. 77, 123, 604 S.E.2d 850, 881 (2004) ("[W]hen this Court reviews ineffective assistance of counsel claims on direct appeal and determines that they have been brought prematurely, we dismiss those claims without prejudice, allowing defendant to bring them pursuant to a subsequent motion for appropriate relief in the trial court." (citation omitted)). Specifically, we cannot say that defendant was prejudiced when we do not know whether Dr. Ostrowski or any other expert would have had a materially different opinion concerning the DNA evidence than the State's experts. At a hearing on a motion for appropriate relief, defendant would have the opportunity to show what testimony or evidence another DNA expert would have added to the proceedings had trial counsel reviewed the discovery in time.

### III. Drug User Witness Instruction

**[3]** Defendant next argues that the trial court erred in denying his request for a special instruction concerning the effect of drug use on a

witness's credibility. He argues that the facts supported such an instruction because Ms. Driver identified defendant as the one with the rifle based upon the "King" tattoo on his arm, she had been smoking marijuana when the robbery and murder occurred, and she was the only witness who was not a co-conspirator who identified defendant.

Properly preserved challenges to "the trial court's decisions regarding jury instructions are reviewed *de novo*, by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009) (citations omitted). But jury instructions are not reviewed in isolation.

> This Court reviews jury instructions contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by the instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*State v. Blizzard*, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (citation, quotation marks, ellipses, and brackets omitted).

"[A]ll substantive and material features of the crime with which a defendant is charged must be addressed in the trial court's instructions to the jury." *State v. Bogle*, 324 N.C. 190, 196, 376 S.E.2d 745, 748 (1989). "[T]he trial court is not[, however,] required to instruct on a subordinate feature of the case absent a special request." *State v. Ward*, 338 N.C. 64, 93, 449 S.E.2d 709, 725 (1994) (citation and quotation marks omitted), *cert. denied*, 514 U.S. 1134, 131 L.Ed. 2d 1013 (1995). "Evidence relating to the credibility of a witness is a subordinate, rather than a substantive, feature of the case." *State v. Edwards*, 37 N.C. App. 47, 50, 245 S.E.2d 527, 529 (1978) (citation omitted).

Where an instruction concerning the credibility of a witness is requested, "the trial court must give the instructions requested, at least in substance, if they are proper and supported by the evidence." *State v. Craig*, 167 N.C. App. 793, 795, 606 S.E.2d 387, 388 (2005). Nevertheless,

> [t]he trial court is not required to give a requested instruction in the exact language of the request; however, when the request is correct in law and supported by the evidence

in the case, the court must give the instructions in substance. It is error for the court to change the sense or to so qualify the requested instruction as to weaken its force.

*State v. Puckett*, 54 N.C. App. 576, 581, 284 S.E.2d 326, 329 (1981) (citations omitted). Defendant cannot show error, however, if that instruction is "implicit in the entire charge." *State v. Howard*, 274 N.C. 186, 200, 162 S.E.2d 495, 504 (1968); *State v. Harris*, 47 N.C. App. 121, 124, 266 S.E.2d 735, 737 (1980) (finding no error where the trial court "charged [the jury] in substance on the matters as requested by defendant."), *cert. denied*, 305 N.C. 762, 292 S.E.2d 577 (1982).

Defendant proposed two alternate instructions concerning a witness's use of a controlled substance. The first proposed instruction read:

The testimony of someone who is shown to have used a controlled substance during the period of time about which the witness testified must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses.

You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

The second proposed instruction read as follows:

There has been evidence introduced at the trial that the government (or defendant) called as a witness a person who was using (or addicted to) drugs when the events he observed took place or who is now using drugs. I instruct you that there is nothing improper about calling such a witness to testify about events within his personal knowledge.

On the other hand, his testimony must be examined with greater scrutiny than the testimony of any other witness. The testimony of a witness who was using drugs at the time of the events he is testifying about, or who is using drugs (or an addict) at the time of his testimony may be less believable because of the effect the drugs may have on his ability to perceive or relate the events in question.

If you decide to accept his testimony, after considering it in light of all the evidence in this case, then you may give it whatever weight, if any, you find it deserves.

Defendant cites no case holding that it is error for a trial judge to refuse to instruct the jury concerning a particular witness's ability to accurately perceive the relevant events based on her use of an intoxicating substance.[2] Here, the trial court instructed the jury concerning the credibility of witnesses as follows:

> You are the sole judges of the believability of witnesses. You must decide for yourself whether to believe the testimony of any witness. You may believe all, any part, or none of a witness's testimony. In deciding whether to believe a witness, you should use the same tests of truthfulness that you use in your everyday lives. Among other things, these tests may include: The opportunity of the witness to see, hear, know or remember the facts or occurrences about which the witness testified; the manner and appearance of the witness; any interest, bias, prejudice, or partiality the witness may have; the apparent understanding and fairnesses [sic] of the witness; whether the testimony is reasonable and whether the testimony is consistent with other believable evidence in the case.

Taking into account the effect of an intoxicating substance on a witness's ability to accurately perceive what is going on around her is one of those "tests of truthfulness that [jurors] use in [their] everyday lives." Evidence of a witness's intoxication at the relevant time is more similar to evidence of a witness's limited eyesight, and other factors jurors normally take into account in assessing the credibility of an eyewitness, than it is to evidence that the witness is a paid informer or otherwise interested in the outcome of the case. *Cf. State v. Puckett,* 54 N.C. App. 576, 582, 284 S.E.2d 326, 330 (1981) (holding that it was prejudicial error to refuse to give a requested instruction about the credibility of an interested witness).

Here, the trial court properly instructed the jury using the general witness credibility instruction. Defendant made clear through cross-examination that the witness had been smoking marijuana before the masked

---

2. Defendant does cite *State v. Edwards,* in which we held that it was not error for the trial court to refrain from instructing the jury concerning the credibility of a witness who had consumed drugs before witnessing the events in question where the defendant had not specifically requested such an instruction. *Edwards,* 37 N.C. App. at 50, 245 S.E.2d at 529. Defendant implies from this holding that had the defendant in *Edwards* requested the instruction, it would have been error for the trial court to refuse to so instruct the jury. We did not address that question in *Edwards,* however, and therefore it is not dispositive of the question before us in the present case.

perpetrators entered the apartment and argued in closing that Ms. Driver could not be believed given her use of marijuana and prior statement that did not mention the "King" tattoo. There was no evidence that Ms. Driver was a co-conspirator, paid informant, or an otherwise interested witness. Therefore, we hold that it was not error for the court to refuse to instruct the jury using defendant's proposed special instruction.

### IV. Conclusion

The trial court did not err or violate defendant's constitutional rights in denying defendant's motion to continue. Further, it was not error for the trial court to refuse to give the requested special instruction on a witness's use of drugs under the facts of this case.

NO ERROR.

Judges HUNTER, Robert C. and ERVIN concur.