INMAN, Judge.
Willie Jenkins ("Defendant") appeals from a judgment entered after a jury convicted him of breaking or entering a motor vehicle, misdemeanor larceny, and communicating threats, and after, he pleaded guilty to attaining the status of an habitual felon. On appeal, Defendant argues that the trial court erred by: (1) denying his motion to dismiss and finding no fatal variance between the indictments and the evidence presented at trial, (2) failing to instruct the jury on a lesser-included offense, and (3) failing to clarify terminology used during jury instruction. Defendant also argues that his sentencing may have been improper because the court reporter's transcript is incomplete and does not reflect that he was present for sentencing. After careful review, we conclude that Defendant received a trial free from error.
Factual and Procedural History
The evidence tends to show the following:
On the night of 3 September 2013, Kevin Boyd ("Boyd") was at his home in Charlotte, North Carolina. At around 10:00 p.m., Boyd walked out of his house and toward his car. Boyd drove a Ford Taurus, which was a "company car," rented for Boyd by his employer, Anheuser-Busch. It had been in Boyd's possession for approximately two years.
It was dark outside. As Boyd approached the car, he attempted to unlock it using a remote control device. His use of the remote turned on the car's interior lights, and Boyd saw Defendant moving around inside the car. Boyd did not know Defendant and had not given him permission to enter the car. After a few seconds, Defendant exited the car and began running down the street. As he was running, Defendant discarded in the street items including Boyd's driver's license, credit card, and a gift card-which Boyd had stored in the car's center console.
Boyd chased Defendant on foot, eventually caught him, and after a struggle Boyd pinned Defendant to the ground. Boyd called out for help. A nearby neighbor, Devin Mendelsohn ("Mendelsohn"), came out of his house and assisted Boyd in restraining Defendant. Mendelsohn's wife called the police. Boyd and Mendelsohn continued holding down Defendant until the police arrived. During this time, Defendant was continually "struggling to get up, to get away."
Before the police arrived, and while Defendant was restrained by both Boyd and Mendelsohn, Defendant alternatively denied ever being inside the car and said that he had only entered the car to turn off an interior light. Defendant also told Boyd and Mendelsohn "that he would come back and kill all of [them]" and "said he would kill [their] families[.]" The police arrived shortly thereafter and arrested Defendant. When police conducted a search of Defendant's pockets, they found a small knife, two cigar cutters, and currency-all of which except the knife belonged to Boyd.
On 23 September 2013, Defendant was indicted for: (1) "breaking and entering" a motor vehicle[1] , (2) misdemeanor larceny, and (3) communicating threats. On 18 November 2013, Defendant was also indicted for attaining the status of an habitual felon. On 31 March 2014, a superseding indictment was issued for "breaking and entering" a motor vehicle and for felonious larceny. Both the indictment issued on 23 September 2013 and the indictment issued on 31 March 2014 describe the Ford Taurus as "belonging to and in the lawful possession of Kevin Boyd[.]"
The breaking and entering, larceny, and communicating threats charges proceeded to a jury trial on 8 December 2014 in Mecklenburg County Superior Court before Judge Hugh B. Lewis. Defendant did not testify. At the close of all evidence, Defendant moved to dismiss each charge, citing insufficient evidence and fatal variances between the indictments and the evidence presented. The trial court denied the motion. At the jury charge conference, Defendant requested that the lesser-included offense of first-degree trespass be submitted to the jury. The trial court denied the request. Defendant also objected to use of the word "victim"-rather than Boyd's name-in the jury charge for the offense of communicating threats. The trial court noted the objection.
On 11 December 2014, the jury found Defendant guilty of: (1) breaking or entering a motor vehicle, (2) misdemeanor larceny, and (3) communicating threats. Defendant subsequently pleaded guilty to being a habitual felon. All four convictions were consolidated for sentencing, and Defendant was sentenced to 46 to 60 months of imprisonment. Defendant timely entered notice of appeal in open court.
Analysis
I. Indictments and Evidence at Trial
Defendant contends that the trial court erred in denying his motion to dismiss based upon a fatal variance between the information contained in the indictments and the evidence presented at trial regarding the vehicle's legal ownership. Because the vehicle belonged to and was in the lawful possession of Boyd, Defendant's argument is without merit.
1. Standard of Review
"This Court reviews the trial court's denial of a motion to dismiss de novo ." State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). Under this standard, the reviewing court "considers the matter anew and freely substitutes its own judgment for that of the lower [court]." State v. Williams , 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal quotation marks and citations omitted).
2. Discussion
"Whether an indictment is sufficient on its face is a separate issue from whether there is a variance between the indictment and the evidence presented at trial[.]" State v. Norman , 149 N.C. App. 588, 594, 562 S.E.2d 453, 457 (2002). "A variance occurs where the allegations in an indictment, although they may be sufficiently specific on their face, do not conform to the evidence actually established at trial." Id. "In order for a variance to warrant reversal, the variance must be material. A variance is not material, and is therefore not fatal, if it does not involve an essential element of the crime charged." State v. Skinner , 162 N.C. App. 434, 445-46, 590 S.E.2d 876, 885 (2004) (citation omitted). "[W]hile an indictment should give a defendant sufficient notice of the charges against him, it should not be subjected to hyper technical scrutiny with respect to form." In re S.R.S. , 180 N.C. App. 151, 153, 636 S.E.2d 277, 280 (2006).
The offense of breaking or entering a motor vehicle has five elements: (1) "a breaking or entering by the defendant; (2) without consent; (3) into a motor vehicle; (4) containing goods, wares, freight, or anything of value; and (5) with the intent to commit any felony or larceny therein." State v. Covington , --- N.C. App. ----, ----, 788 S.E.2d 671, 675 (2016) (internal quotation marks and citation omitted).[2] Ownership or lawful possession of a vehicle is relevant to the second element of the offense-the requirement that the breaking or entering occur without consent. See State v. Jacobs , 202 N.C. App. 350, 352-53, 688 S.E.2d 112, 113-14 (2010) (finding that issues of proof of ownership and lack of consent are "intertwined" in the context of breaking or entering a motor vehicle).
This Court emphasizes control and lawful possession over technical legal ownership. In State v. Harrington , for example, the defendant pleaded guilty to breaking or entering a motor vehicle upon an indictment which alleged that the vehicle was "in the possession of one Durwood Emmett Stroud...." 15 N.C. App. 602, 603, 190 S.E.2d 280, 281 (1972) (alteration in original) (internal quotation marks omitted). On appeal, the defendant challenged the indictments for their failure to allege technical ownership of the motor vehicle. Id. This Court rejected the challenge, holding instead that "the gravamen of the offense with which [the] defendant is charged is the breaking and entering with intent to commit larceny ." Id. at 604, 190 S.E.2d at 281. This Court explained that, by alleging possession of the vehicle and ownership of the property within, the indictment "clearly negate[d] the possibility of [the] defendant breaking and entering the vehicle to steal his own property." Id. In such a case, this Court held, "[t]he technical ownership of the vehicle broken into is immaterial." Id. ; see also State v. McNeil , 28 N.C. App. 125, 127, 220 S.E.2d 401, 403 (1975) (holding there was no fatal variance between the indictment for breaking or entering and the evidence at trial because "there [wa]s no question that the custody and control of the building involved was vested in [the victim] as set forth in the indictment").
In this case, the indictment for breaking and entering a motor vehicle alleged that the Taurus "belong[ed] to and [was] in the lawful possession of Kevin Boyd." Evidence presented at trial confirmed that the car was in the lawful possession of Boyd. The evidence also established that the car was technically owned by Donlen Trust, a fleet management company, and was leased by Boyd's employer, Anheuser-Busch. It had been assigned to Boyd, and had been in his possession, for approximately two years. The evidence presented at trial showed that Boyd, who was in lawful possession of the vehicle, did not consent to Defendant breaking or entering into the vehicle. Further, the evidence showed that Defendant removed Boyd's personal property from the car. Therefore, the indictments alleged and the evidence established facts necessary to establish lack of consent-the second element of the offense. The harmony between the indictment and the evidence demonstrates that Defendant's argument is without merit.
II. Lesser-Included Offense
Defendant contends that the trial court erred by failing to instruct the jury on the lesser-included offense of first-degree trespass. Because the State's evidence supported every element of the greater offense and did not support the lesser offense, we find no error.
1. Standard of Review
This Court reviews a trial court's denial of a request for an instruction on a lesser-included offense de novo . State v. Laurean , 220 N.C. App. 342, 345, 724 S.E.2d 657, 660 (2012). Under this standard, the reviewing court "considers the matter anew and freely substitutes its own judgment for that of the lower [court]." Williams , 362 N.C. at 632-33, 669 S.E.2d at 294 (internal quotation marks and citation omitted).
2. Discussion
A "trial court may refrain from submitting [a] lesser[-included] offense to the jury only where the evidence is clear and positive as to each element of the offense charged and no evidence supports a lesser-included offense." State v. Lawrence , 352 N.C. 1, 19, 530 S.E.2d 807, 819 (2000) (internal quotation marks and citation omitted). "The sole factor determining the judge's obligation to give such an instruction is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense." State v. Wright , 304 N.C. 349, 351, 283 S.E.2d 502, 503 (1981) (citation omitted).
As discussed supra , the offense of breaking or entering a motor vehicle requires that the State prove five elements-including "the intent to commit any felony or larceny therein." Covington , --- N.C. App. at ----, 788 S.E.2d at 675 (citation omitted). "First-degree trespass is a lesser-included offense of felonious breaking or entering." State v. Lucas , 234 N.C. App. 247, 256, 758 S.E.2d 672, 678 (2014) (citation omitted); see also N.C. Gen. Stat. § 14-159.14 (2015). Intent is the distinguishing element between the two: "[u]nlike felonious breaking or entering, first-degree trespass does not include the element of felonious intent but rather merely requires evidence that the defendant entered or remained on the premises or in a building of another without authorization." Lucas , 234 N.C. App. at 256, 758 S.E.2d at 678-79. The required intent "must be present at the time of entrance [.]" State v. Montgomery , 341 N.C. 553, 566, 461 S.E.2d 732, 739 (1995) (citation omitted).
The State's evidence was sufficient to support a finding that Defendant intended to commit larceny, a felony, when he broke into the vehicle and therefore was sufficient submit that offense to the jury. "Intent being a mental attitude, it must ordinarily be proven, if proven at all, by circumstantial evidence[.]" State v. Clagon , 207 N.C. App. 346, 350, 700 S.E.2d 89, 92 (2010) (internal quotation marks and citations omitted). Intent at the time of entrance can "be inferred from the defendant's subsequent actions." Montgomery , 341 N.C. at 566, 461 S.E.2d at 739 (citation omitted). This Court has held in breaking or entering cases that intent to commit a felony or larceny at the time of entrance may be inferred from the disturbance of property after the entrance. In State v. Berry , 58 N.C. App. 355, 358, 293 S.E.2d 650, 652 (1982), the defendant appealed a conviction for felony breaking or entering on the grounds that the State had failed to show intent to commit a felony. This Court disagreed. Id. Distinguishing earlier cases in which nothing had been taken or disturbed inside a building after a breaking or entering, this Court noted that "all the evidence showed a television set had been moved from the den to the front door. All the evidence was to the effect that whoever broke into [the victim's] house intended to take the television set. This would make it a felonious breaking or entering." Id. As such, this Court held, "[t]here was no evidence of a misdemeanor breaking or entering." Id. ; see also State v. Hamilton , 132 N.C. App. 316, 319, 512 S.E.2d 80, 83 (1999) (holding that, where the defendant forced his way into a department store and stole items from the premises, there was evidence of felonious intent).
Here, Defendant stole a number of personal items of value from Boyd's car. As he ran from the car after being discovered, Defendant discarded items belonging to Boyd which had previously been stored in the car. After Defendant's arrest, a search of his person revealed additional items belonging to Boyd that had been stored in the car, including two cigar cutters and currency. As in Berry and Hamilton , Defendant disturbed and took items from inside Boyd's car after his entrance into the car. This evidence positively supports the felony offense.
Defendant also argues that his statement to Boyd that he had entered the car to turn off an interior light-which he offered after denying having entered the car at all-would have allowed a rational juror to find that he formed the intent to commit a larceny only after entering the car.
Both this Court and the North Carolina Supreme Court have held that after-the-fact assertions are not sufficient, on their own, to warrant submission of a lesser-included offense to the jury. In State v. Singletary , 344 N.C. 95, 104, 472 S.E.2d 895, 900 (1996), for example, our Supreme Court held that:
An after-the-fact assertion by the defendant that his intention to commit a felony was formed after he broke and entered is not enough to warrant an instruction on the lesser-included offense of misdemeanor breaking or entering unless there is some before the fact evidence to which defendant's statements afterwards could lend credence.
(internal quotation marks and citation omitted); see also State v. Little , 163 N.C. App. 235, 240-41, 593 S.E.2d 113, 116-17 (2004) (holding that, where the defendant testified that he planned to assault two people-but to only use a bat as a weapon if his life was subsequently threatened-did not warrant submission of a lesser-included offense to the jury where "there was no 'before-the-fact evidence' to support [the] defendant's statement that he did not intend to use the bat").
Here, Defendant's after-the-fact assertion stands uncorroborated by any evidence and therefore did not warrant submission of the lesser-included offense to the jury.
We hold that because the State's evidence was sufficient to show that Defendant broke into and entered Boyd's car with the intent to commit larceny, and because no evidence other than Defendant's after-the-fact statement supported the theory that he formed that intent only after entering the car, the trial court did not err in declining to instruct jurors that they could find Defendant guilty of misdemeanor breaking or entering.
III. Communicating Threats
1. Standard of Review
This Court reviews a trial court's decisions regarding jury instructions de novo . State v. King , 227 N.C. App. 390, 396, 742 S.E.2d 315, 319 (2013). Under this standard, the reviewing court "considers the matter anew and freely substitutes its own judgment for that of the lower [court]." Williams , 362 N.C. at 632-33, 669 S.E.2d at 294 (internal quotation marks and citation omitted).
2. Discussion
Defendant argues that the trial court erred by not specifically identifying Boyd as the "victim" when charging the jury with the elements of the offense of communicating threats. Because the evidence presented at trial showed that the threats were plural, and included Boyd, we find no error.
"In giving [jury] instructions the court is not required to follow any particular form and has wide discretion as to the manner in which the case is presented to the jury[.]" State v. Mundy , 265 N.C. 528, 529, 144 S.E.2d 572, 573 (1965). On review, "jury instructions are not reviewed in isolation." King , 227 N.C. App. at 396, 742 S.E.2d at 319. Instead, "[t]his Court reviews jury instructions contextually and in its entirety ... it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury." State v. Blizzard , 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (internal quotation marks and citation omitted).
In the case sub judice , the trial court instructed the jury that, in order to find Defendant guilty of the offense of communicating threats, the jury had to make five findings of fact. In pertinent part, these included the finding that Defendant "willfully threatened to physically injure the victim " and the finding that "the threat was communicated to the victim ." (emphases added). The trial court's instructions conformed with the North Carolina Pattern Jury Instructions for communicating threats. See N.C.P.I. 235.18 (2015). On appeal, Defendant argues that the trial court's use of the word "victim" during jury instruction was ambiguous. Defendant contends that the jury may have believed that the threat was directed at either Boyd or Mendelsohn; that the jury may have believed that only one party was the victim of the threat; and that the trial court, therefore, should have used Boyd's name in place of the term "victim" during the jury charge for clarity.
At trial, both Boyd and Mendelsohn described the threat using plural pronouns and adjectives. Boyd testified that Defendant "said that he would come back and kill all of us ." (emphasis added). Boyd testified that the threat was "in reference to [Mendelsohn] and me." Mendelsohn testified that Defendant "said he would kill our families or something." (emphasis added). When asked at trial whether Mendelsohn believed the threat specifically threatened Boyd, Mendelsohn answered in the affirmative.
Further, the record in the present case shows that use of the word "victim" in the jury instructions referred exclusively to Boyd. A review of the trial transcript reveals that the term was used consistently to signify Boyd. At the beginning of the trial, the trial judge informed the jury that "[t]he name of the alleged victim is one Kevin Boyd." Throughout the trial, the term "victim" was used at least 32 times to refer to Boyd in the presence of the jury. The term was not used to refer to Mendelsohn. The transcript shows consistency-rather than ambiguity-in the conveyed meaning. Because the threats were plural in nature, and included Boyd as "victim," we find no error.
IV. Sentencing
1. Standard of Review
This Court reviews challenges to sentencing imposition de novo . State v. Collins , --- N.C. App. ----, ----, 782 S.E.2d 350, 354 (2016) (applying the de novo standard on appeal where the defendant challenged a sentencing term change imposed outside the defendant's presence). Under this standard, the reviewing court "considers the matter anew and freely substitutes its own judgment for that of the lower [court]." Williams , 362 N.C. at 632-33, 669 S.E.2d at 294 (internal quotation marks and citation omitted).
2. Discussion
Defendant contends that the sentencing transcript is incomplete, that it does not conclusively show that sentencing occurred in his presence, and that he is therefore entitled to a new sentencing hearing. Because Defendant was sentenced in the presumptive range and has not shown prejudice, we find no error.
"In North Carolina, a defendant's right to appeal in a criminal proceeding is purely a creation of state statute." State v. Pimental , 153 N.C. App. 69, 72, 568 S.E.2d 867, 869 (2002) (citations omitted). This Court is "required to follow longstanding precedents, which hold a defendant's right to appeal from a judgment following a plea of guilty is limited to the grounds enumerated in N.C. Gen. Stat. §§ 15A-1444 and 15A-979(b)." State v. Ledbetter , ---N.C. App. ----, ----, 779 S.E.2d 164, 168 (2015) (citations omitted); see also N.C. Gen. Stat. § 15A-1444 (2015). Where a defendant does not plead some other error in sentencing-such as an incorrect finding of his or her prior record level or the imposition of a sentence term for a duration not authorized by law-a defendant sentenced in the presumptive range does not have a statutory right to appeal. N.C. Gen. Stat. § 15A-1444 ; see also State v. Hamby , 129 N.C. App. 366, 499 S.E.2d 195 (1998).
The record shows that Defendant's four convictions were consolidated for sentencing. Defendant was then sentenced within the presumptive range, for a term of 46 to 60 months of imprisonment. Other than the possibility that sentencing occurred outside his presence, discussed infra , Defendant has not alleged any other defects in sentencing. Under these facts, and as his sentence is in the presumptive range, Defendant does not have a statutory right to appeal on this issue.
The record in this case is marked by incomplete transcription. However, this Court has held that "[t]he unavailability of a verbatim transcript does not automatically constitute error. To prevail on such grounds, a party must demonstrate that the missing recorded evidence resulted in prejudice." State v. Quick , 179 N.C. App. 647, 651, 634 S.E.2d 915, 918 (2006) (internal citations omitted). "General allegations of prejudice are insufficient to show reversible error." Id. Here, Defendant argues that the record does not affirmatively show that he was present at sentencing and, therefore, that he may have been denied a common law right. Defendant, however, has not alleged specific prejudice. His general allegations therefore are not sufficient to show reversible error.
As Defendant's sentence was in the presumptive range, the statute provides no remedy on appeal. Though transcription of sentencing was incomplete, Defendant has alleged no prejudice. We find no error.
Conclusion
We find no error, as: (1) both the indictments and the evidence presented at trial showed that the car was in Boyd's lawful possession at the time of the incident, (2) the evidence was clear and positive as to the element of intent, (3) the threats made by Defendant clearly included Boyd as the "victim," and (4) Defendant is not entitled to appeal his sentence within the presumptive range.
NO ERROR.
Report per Rule 30(e).
Judges CALABRIA and MCCULLOUGH concur.
Judge Douglas McCullough concurred in this opinion prior to 24 April 2017.

The indictment for felony breaking and entering charged Defendant with "breaking and entering motor vehicle G.S. 14-56." It is noted that N.C. Gen. Stat. § 14-56 (2015) is titled "Breaking or entering into or breaking out of railroad cars, motor vehicles, trailers, aircraft, boats, or other watercraft." (emphasis added). Defendant does not argue that he was prejudiced by the language in the indictment.

Defendant argues that breaking or entering a motor vehicle belongs to a category of crimes requiring that the State allege ownership of the vehicle in the indictment. Defendant cites State v. Chillo, 208 N.C. App. 541, 543, 705 S.E.2d 394, 396 (2010), and its statement that "[b]ecause the State is required to prove ownership, a proper indictment must identify as victim a legal entity capable of owning property." Chillo continues: "[i]f the entity named in the indictment is not a person, it must be alleged that the victim was a legal entity capable of owning property." Id. at 543-44, 705 S.E.2d at 396 (internal quotation marks and citation omitted). The Chillo rule does not apply here, because the indictments named Boyd, a person, as the victim. Further, ownership itself is not one of the five essential elements of the offense. See Covington, --- N.C. App. at ----, 788 S.E.2d at 675.