STATE OF NORTH CAROLINA v. JUSTIN HASTINGS CHILLO

No. COA10-622

(Filed 21 December 2010)

**1. Indictment and Information— sufficiency of indictment— legal entity capable of owning property—trusts**

A *de novo* review revealed that the trial court did not err when it entered judgment on the charge of breaking and entering a motor vehicle even though defendant contended the underlying indictment was fatally defective. The language of the indictment indicated that the victim was a trust, and a trust is a legal entity capable of owning property.

**2. Burglary and Unlawful Breaking or Entering— breaking and entering motor vehicle—insufficient evidence of intent to commit larceny**

A *de novo* review revealed that the trial court erred when it entered judgment on the charge of breaking and entering a motor vehicle. There was insufficient evidence to establish defendant's intent to commit larceny based upon the State's failure to show that defendant intended to permanently deprive the owner of property.

Appeal by defendant from judgment entered 28 October 2009 by Judge Clifton W. Everett, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 3 November 2010.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Kimberly D. Potter, for the State.*

*Anne Bleyman, for defendant-appellant.*

JACKSON, Judge.

Justin Hastings Chillo ("defendant") appeals his 28 October 2009 conviction of breaking or entering a motor vehicle. For the reasons set forth below, we reverse.

On 6 December 2008 at approximately 1:00 a.m., defendant picked up his friend, Cameron Moser ("Moser"), from Moser's mother's residence in Bethel, North Carolina. Moser understood that they would be "hanging out" with two girls that night. Defendant drove them to Walmart in Greenville, North Carolina, and, according to Moser, defendant stole a spark plug from Walmart's hardware department at approximately 1:30 a.m.

After leaving Walmart, defendant drove to the Lynndale neighborhood in Greenville, where defendant "drove around the neighborhood for a little bit . . . ." While in Lynndale, defendant parked and exited his vehicle and used a blunt object to break the spark plug into two pieces. According to Moser, defendant then drove up the street, stopped, again exited his vehicle, and threw the spark plug at the passenger side window of a 2007 Dodge Caravan parked on the side of the road. The spark plug bounced off the window; however, upon throwing it a second time, defendant broke the Caravan's window. After the window was broken, defendant got back into his car, and he and Moser "just left."

Upon leaving Lynndale, defendant drove Moser through the Brook Valley neighborhood. Defendant indicated to Moser that he had been in Brook Valley earlier and "went into a car . . . or something like that" during his previous trip.

Before taking Moser home, defendant stopped at a gas station to get gas. According to Moser, defendant parked across the street and got his gas using gas cans. Moser testified that defendant did this "[s]o he wouldn't get the car on videotape."

The Caravan at issue was in the possession of Ansley Stroud ("Stroud"). Stroud's employer, Rite-Aid Pharmacy, provided her with this vehicle to use in her job as a pharmacy district manager. The Caravan is owned by and registered to D.L. Peterson Trust. Officer Scott Lascallette ("Officer Lascallette") testified that, upon examining the vehicle after the window was broken, "nothing was out of sorts in [the Caravan] . . . . [E]verything looked in order."

STATE v. CHILLO

[208 N.C. App. 541 (2010)]

On 8 June 2009, the Pitt County Grand Jury issued an indictment charging defendant with felonious breaking and entering a motor vehicle. On 28 October 2009, a jury returned a verdict finding defendant guilty of breaking or entering a motor vehicle. The trial court sentenced defendant to a term of six to eight months imprisonment. However, the term was suspended, and defendant was placed on supervised probation for thirty months. Defendant appeals from his conviction.

[1] On appeal, defendant first argues that the trial court erred when it entered judgment on the charge of breaking and entering a motor vehicle because the underlying indictment was fatally defective. In relevant part, the indictment alleged that "the defendant . . . unlawfully, willfully and feloniously did break and enter a motor vehicle, a 2007 Dodge Caravan, the personal property of D.L. Peterson Trust. . . ." Defendant argues that the indictment was fatally defective because it failed to allege that the victim was a legal entity capable of owning property. We disagree.

Our review of whether the indictment was fatally defective is *de novo. State v. Marshall*, 188 N.C. App. 744, 748, 656 S.E.2d 709, 712 (citing *State v. Sturdivant*, 304 N.C. 293, 308, 283 S.E.2d 719, 729-30 (1981)), *disc. rev. denied*, 362 N.C. 368, 661 S.E.2d 890 (2008). Furthermore, our Supreme Court has held that

[a] bill of indictment is insufficient to confer jurisdiction unless it charges all essential elements of a criminal offense. (W)here no crime is charged in the warrant or bill of indictment upon which the defendant has been tried and convicted the judgment must be arrested.

A charge in a bill of indictment must be complete in itself, and contain all of the material allegations which constitute the offense charged. . . .

*State v. Benton*, 275 N.C. 378, 381-82, 167 S.E.2d 775, 777 (1969) (internal citations and quotation marks omitted) (second alteration in original).

"Because the State is required to prove ownership, a proper indictment must identify as victim a legal entity capable of owning property. An indictment that insufficiently alleges the identity of the victim is fatally defective and cannot support [the] conviction . . . ." *State v. Woody*, 132 N.C. App. 788, 790, 513 S.E.2d 801, 803 (1999). "If the entity named in the indictment is not a person, it must be alleged

'that the victim was a legal entity capable of owning property[.]' " *State v. Phillips*, 162 N.C. App. 719, 721, 592 S.E.2d 272, 273 (2004) (quoting *Woody*, 132 N.C. App. at 790, 513 S.E.2d at 803).

In *State v. Turner*, 8 N.C. App. 73, 173 S.E.2d 642 (1970), the defendant alleged that an indictment for larceny, listing "City of Hendersonville" as the owner of stolen property, was fatally defective because "it fail[ed] to allege that the owner of the property allegedly stolen is either a natural person or a legal entity capable of owning property." *Id.* at 74, 173 S.E.2d at 642. We held that the "City of Hendersonville" denotes a "municipal corporate entity[,]" capable of owning personal property. *Id.* at 75, 173 S.E.2d at 643. To support our holding, we noted that North Carolina General Statutes, section 160-2(4) provides that "[m]unicipal corporations are expressly authorized to purchase and hold personal property." *Id.* at 75, 173 S.E.2d at 643 (citing N.C. Gen. Stat. § 160-2(4)). As such, we held that the indictment was proper because "[i]t is well established that judicial notice will be taken of [the] laws of this State[.]" *Id.* at 74, 173 S.E.2d at 643 (citation omitted).

In the case *sub judice*, the indictment states that "the defendant . . . unlawfully, willfully and feloniously did break and enter a motor vehicle . . . the personal property of D.L. Peterson Trust . . . ." The express language of the indictment clearly indicates that the entity in question is a trust. *But cf. State v. Price*, 170 N.C. App. 672, 674, 613 S.E.2d 60, 62 (2005) (holding that the words "City of Asheville Transit and Parking Services" do not indicate a legal entity capable of owning property "because the additional words after 'City of Asheville' make it questionable what type of organization it is"). Unlike the indictment in *Price*, the indictment in the instant case leaves no question that a trust is the legal entity charged with owning the Caravan.

As a trust, "D.L. Peterson Trust," is a legal entity capable of owning property. *See, e.g.*, N.C. Gen. Stat. § 36C-4-401 (2009) (setting forth a property requirement for the creation of a trust); 2 James B. McLaughlin, Jr. & Richard T. Bowser, *Wiggins: Wills and Administration of Estates in North Carolina* § 23:2 (rev. 4th ed. 2005) (explaining that property, the trust *res*, is a necessary requirement for the creation of a trust). Like "City of Hendersonville" in *Turner*, a trust is capable of holding property pursuant to applicable state law. *Turner*, 8 N.C. App. at 74-75, 173 S.E.2d at 643. The indictment names D.L. Peterson Trust as the owner of the Caravan, and,

pursuant to North Carolina law, the word "trust" is a "term capable of notifying a criminal defendant either directly or by clear import that the victim is a legal entity capable of holding property." *Woody*, 132 N.C. App. at 791, 513 S.E.2d at 803. As such, we hold that the indictment was not fatally defective and that defendant's argument is without merit.

[2] Next, defendant argues that his conviction for breaking or entering a motor vehicle must be vacated because there was insufficient evidence to establish his intent to commit larceny. We agree.

We review the denial of a motion to dismiss *de novo. See State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (citations omitted). Our Supreme Court has set forth the standards governing our review of motions to dismiss:

> When ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. Any contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered. The trial court must decide only whether there is substantial evidence of each essential element of the offense charged and of the defendant['s] being the perpetrator of the offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. When the evidence raises no more than a suspicion of guilt, a motion to dismiss should be granted. However, so long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also permits a reasonable inference of the defendant's innocence.

*State v. Miller*, 363 N.C. 96, 98-99, 678 S.E.2d 592, 594 (2009) (internal citations and quotation marks omitted). Therefore, "[i]f there is more than a scintilla of competent evidence to support the allegations in the warrant or indictment, it is the court's duty to submit the case to the jury." *State v. Horner*, 248 N.C. 342, 344-45, 103 S.E.2d 694, 696 (1958) (citations omitted).

North Carolina General Statutes, section 14-56 provides:

> If any person, with intent to commit any felony or larceny therein, breaks or enters any railroad car, motor vehicle, trailer, aircraft, boat, or other watercraft of any kind, containing any goods, wares, freight, or other thing of value, or, after having committed

any felony or larceny therein, breaks out of any railroad car, motor vehicle, trailer, aircraft, boat, or other watercraft of any kind containing any goods, wares, freight, or other thing of value, that person is guilty of a Class I felony. It is prima facie evidence that a person entered in violation of this section if he is found unlawfully in such a railroad car, motor vehicle, trailer, aircraft, boat, or other watercraft.

N.C. Gen. Stat. § 14-56 (2009). The offense proscribed by the statute contains five essential elements: "1) a breaking or entering 2) without consent 3) into any motor vehicle 4) containing goods, freight, or anything of value 5) with the intent to commit any felony or larceny therein." *State v. Riggs,* 100 N.C. App. 149, 155, 394 S.E.2d 670, 673 (1990), *disc. rev. denied,* 328 N.C. 96, 402 S.E.2d 425 (1991).

In the instant case, defendant's indictment specified that he "feloniously did break and enter a motor vehicle . . . with the intent to commit larceny therein, in violation of G.S. 14-56." Our Supreme Court has held that "when the indictment alleges an intent to commit a particular felony, the State must prove the particular felonious intent alleged." *State v. Wilkinson,* 344 N.C. 198, 222, 474 S.E.2d 375, 388 (1996) (citation omitted), *cert. denied,* 353 N.C. 279, 546 S.E.2d 394 (2000). Therefore, since the State indicted defendant for breaking and entering a motor vehicle based upon the intent to commit larceny therein, the State was required to prove defendant intended to commit larceny upon breaking and entering into the vehicle.

"The essential elements of larceny are: (1) taking the property of another; (2) carrying it away; (3) without the property owner's consent; and (4) with the intent to deprive the owner of the property permanently." *State v. Wilson,* 154 N.C. App. 686, 690, 573 S.E.2d 193, 196 (2002) (citations omitted). "Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." *State v. Bell,* 285 N.C. 746, 750, 208 S.E.2d 506, 508 (1974) (citations omitted), *overruled in part on other grounds by State v. Collins,* 334 N.C. 54, 431 S.E.2d 188 (1993). For example, "the intent to commit larceny may be inferred from the fact that defendant committed larceny." *State v. Thompkins,* 83 N.C. App. 42, 43, 348 S.E.2d 605, 606 (1986) (citation omitted).

To prove defendant's intent to commit larceny, the State relies upon Moser's testimony that (1) defendant had stolen a spark plug from Walmart; (2) defendant told Moser that "he went into a car" in the Brook Valley neighborhood earlier; and (3) defendant parked

across the street from a gas station and refueled his vehicle with gas cans "[s]o he wouldn't get the car on videotape." However, the State acknowledges that defendant's stated purpose for obtaining the spark plug was "to show [Moser] how to break glass." Furthermore, the State acknowledges that once defendant and Moser heard the Caravan's glass shatter, they "left the scene." Once they left, defendant drove through the Brook Valley neighborhood and told Moser that he previously "went into a car there." Later, defendant parked across the street from the gas station and used gas cans to refuel his vehicle. Moser testified that, although defendant did not say so, it was Moser's opinion that defendant did this because he did not want his car to be recorded on videotape. The State contends that defendant's intent to commit a larceny inside the Caravan properly can be inferred by the foregoing circumstantial evidence.

Although we are bound to review the facts in the light most favorable to the State, *see Miller*, 363 N.C. at 98, 678 S.E.2d at 594, we do not think defendant's intent to commit the crime charged can be inferred from the evidence presented. The State's evidence adduced on direct examination of its witnesses limits the purpose of stealing the spark plug simply to show Moser "how to break glass," and Moser's testimony establishes that he and defendant left once they heard the Caravan's glass break. Furthermore, Officer Lascallette testified that he observed a hole in the middle of the Caravan's front passenger window, which was perhaps large enough to fit his arm through, but he "determined that entrance into the van was probably not made" because he observed that "the glass had collected on the inside of the door." He explained that "if the door had been opened, the glass would have spilled out, but that was not the case." Additionally, Officer Lascallette explained that "nothing was out of sorts in [the Caravan.] Usually, when a car's been broke [sic] into, the glove compartments are pulled open and they don't take the time to put anything back together. So--but everything looked in order." Finally, Stroud testified that, although she had CDs and other personal items in the Caravan, nothing had been taken.

Although Moser testified that defendant claimed that he previously "went into a car" in the Brook Valley neighborhood, defendant's assertion with respect to the alleged commission of a different potential violation of North Carolina General Statutes, section 14-56 serves as a point of distinction from the charge at issue in light of (1) Moser's testimony that defendant's sole intent with respect to the Caravan was "to show [Moser] how to break glass" with a spark plug, (2)

Moser's testimony that he and defendant left the Caravan upon hearing the glass break, and (3) testimony from Officer Lascallette and Stroud that "nothing was out of sorts" or taken from the Caravan at issue.

Finally, with respect to Moser's opinion that defendant parked his car across the street from the gas station to avoid his car's being recorded by surveillance cameras, we note this action may indicate some acknowledgment of culpability on the part of defendant, but we do not believe that our standard of review contemplates such a liberal reading of the facts so as to divine defendant's intent to commit a larceny in the Caravan rather than to avoid detection for simply breaking the window.

The circumstantial evidence upon which the State relies does not align with instances where such evidence has supported an intent to commit larceny. *Cf.*, *e.g.*, *State v. Baskin*, 190 N.C. App. 102, 109-10, 660 S.E.2d 566, 572 (holding that the State had presented sufficient evidence to overcome a motion to dismiss upon showing that the defendant shared a common purpose to commit a larceny after breaking and entering a motor vehicle when another man was seen taking a satchel from a truck to the defendant's vehicle, the defendant hastily drove away, and the satchel soon was thrown from the defendant's vehicle), *disc. rev. denied*, 362 N.C. 475, 666 S.E.2d 648 (2008); *Riggs*, 100 N.C. App. at 155, 394 S.E.2d at 673 (holding that the State had presented evidence sufficient to overcome a motion to dismiss when testimony established that the defendant and his accomplices had been seen walking toward a truck, and, after a loud noise, they emerged carrying boxes of wine, and that the truck's padlock was discovered to have been broken and the wine to have been taken without authority). As distinguished from those cases in which we held that there was intent to commit larceny, there is no evidence in the instant case showing that defendant fled the scene before being able to complete the crime, and, furthermore, there was nothing missing or "out of sorts in [the Caravan]."

As the State failed to meet its burden of proving defendant's intent to commit the crime of larceny based upon its failure to show that defendant intended to deprive the owner of property permanently, we hold that the trial court erred in denying defendant's motion to dismiss.

For the foregoing reasons, we reverse the conviction for breaking or entering a motor vehicle with intent to commit a larceny.

IN RE D.H.H.

[208 N.C. App. 549 (2010)]

Reversed.

Judges HUNTER and ELMORE concur.