NO. COA13-1404

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

STATE OF NORTH CAROLINA

    v.

THOMAS CRAIG CAMPBELL,
    Defendant.

Cleveland County
No. 12CRS054927-28

Appeal by defendant from Judgment entered on or about 12 June 2013 by Judge Linwood O. Foust in Superior Court, Cleveland County. Heard in the Court of Appeals 7 May 2014.

> *Attorney General Roy A. Cooper, III, by Assistant Attorney General Allison A. Angell, for the State.*

> *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Jason Christopher Yoder, for defendant-appellant.*

STROUD, Judge.

Thomas Campbell ("defendant") appeals from the judgment entered after a Cleveland County jury found him guilty of larceny and breaking or entering a place of religious worship. We vacate defendant's larceny conviction and reverse his conviction for breaking or entering a place of religious worship. We remand for entry of judgment and resentencing on misdemeanor breaking or entering.

## I.  Background

On 8 October 2012, defendant was indicted for breaking or entering a place of religious worship and larceny after breaking or entering. The larceny indictment alleged that on 15 August 2012 defendant "willfully and feloniously did steal, take, and carry away a music receiver, microphones, and sounds [sic] system wires, the personal property of Andy Stephens and Manna Baptist Church, pursuant to a breaking or entering in violation of N.C.G.S. 14-54.1(a)." Defendant pled not guilty and proceeded to jury trial.

At trial, the State's evidence tended to show that Pastor Andy Stephens of Manna Baptist Church, located on Burke Road in Shelby, North Carolina, discovered after Sunday services on 19 August 2012 that a receiver, several microphones, and audio cords were missing.  The cords were usually located at the front of the church, by the sound system, or in the baptistery changing area.  It appeared that the sound system had been opened up and items inside had been moved around. Pastor Stephens found a wallet in the baptistery changing area that contained a driver's license belonging to defendant.

Pastor Stephens testified that when the church secretary arrived on Thursday morning earlier that week, she had noticed

that the door was unlocked. She assumed that it had been left unlocked after Wednesday night services, which had ended around 9 p.m. Although the front door is normally locked at night, on cross-examination, Pastor Stephens admitted that the church door had been left unlocked overnight before. Pastor Stephens said that the secretary did not notice anything amiss on Thursday morning.

After Pastor Stephens realized that the audio equipment was missing he called the Cleveland County Sheriff's Office. Deputy Jordan Bowen responded to the scene. The deputy examined the premises but found no signs of forced entry. He recovered defendant's wallet from the pastor.

Investigator Jessica Woosley went to speak with defendant at the Cleveland County Detention Center, where he was being held on an unrelated breaking or entering charge. When Investigator Woosley introduced herself, defendant said, "this can't possibly be good. What have I done now that I don't remember?" Investigator Woosley read defendant his *Miranda* rights and defendant invoked his right to counsel. Investigator Woosley tried to end the interview, but defendant continued talking.

Defendant admitted that he had been to Manna Baptist Church on the night in question, but stated that he could not remember what he had done there. He explained that he had mental issues and blacked out at times. Defendant claimed to be a religious man who had been "on a spiritual journey." He said that he remembered the door to the church being open, but that he did not remember doing anything wrong.

After speaking with defendant, Investigator Woosley searched through a pawn shop database for any transactions involving items matching those missing from the church but did not find anything. The missing items were never recovered.

At the close of the State's evidence, defendant moved to dismiss the charges. The trial court denied the motion. Defendant then elected to present evidence and testify on his own behalf. Defendant testified that he was a 51 year old man with a high school education and one semester of college. He said that on 15 August 2012, he had been asked to leave the home he was living in, so he packed his possessions in a duffel bag and left. He started walking toward a friend's house but dropped the bag in a ditch because it was too heavy to carry long-distance.

Around midnight, defendant arrived at his friend's house, but his friend's girlfriend asked him to leave, so he did. Defendant continued walking down the road until he came upon the church. He noticed that the door was cracked slightly and a "sliver of light" was emanating from within. Defendant explained that after all his walking, he was thirsty and tired, so he went into the church looking for water and sanctuary. He said that while he was inside, he got some water, prayed, and slept. He claimed that he did not intend to take anything and did not take anything when he left around daybreak.

After leaving the church, defendant began walking down the road again. He soon began having chest pains and called 911. Defendant explained that he was on a variety of medications at the time, including powerful psychotropic medication. An ambulance arrived and took him to Cleveland Memorial Hospital.

Calvin Cobb, the Emergency Medical Technician (EMT) who responded to defendant's call, also testified on defendant's behalf. Mr. Cobb said that they received a dispatch call around 6:30 a.m. When they arrived at the intersection of Burke Road and River Hill Road, they saw defendant near an open field, sitting on the back of a fire truck that had been first to respond. Defendant told Mr. Cobb that he had been wandering all

night. Mr. Cobb noticed that defendant looked disheveled and worn out, and that defendant had worn through the soles of his shoes. Mr. Cobb did not see defendant carrying anything and did not find anything in his pockets.

After defendant rested his case, the State called another officer in rebuttal. The State wanted to offer his testimony regarding defendant's prior breaking or entering arrest. The trial court asked the State to explain the relevance of the prior incident. The State argued that it contradicted part of defendant's testimony regarding what happened before he got to the church, but did not elaborate on how it contradicted defendant's testimony and did not otherwise explain its relevance. The trial court excluded the rebuttal testimony under Rule 403. At the close of all the evidence, defendant renewed his motion to dismiss all charges, which the trial court again denied.

The jury found defendant guilty of both charges. The trial court consolidated the charges for judgment and sentenced defendant to a split sentence of 13-25 months imprisonment, suspended for 24 months of supervised probation, and an active term of 140 days in jail. Defendant gave timely written notice of appeal.

## II. Larceny Indictment

Defendant first argues that the larceny indictment on which he was tried was fatally defective because it "failed to allege that Manna Baptist Church was an entity capable of owning property." We agree.

"It is well settled that a valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony." *State v. Abraham*, 338 N.C. 315, 339, 451 S.E.2d 131, 143 (1994) (citation and quotation marks omitted). "A challenge to the facial validity of an indictment may be brought at any time, and need not be raised at trial for preservation on appeal." *State v. LePage*, 204 N.C. App. 37, 49, 693 S.E.2d 157, 165 (2010).

"An indictment must allege all of the essential elements of the crime sought to be charged." *State v. Ledwell*, 171 N.C. App. 328, 331, 614 S.E.2d 412, 414 (citation and quotation marks omitted), *disc. rev. denied*, 360 N.C. 73, 622 S.E.2d 624 (2005). "The essential elements of larceny are that the defendant (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to permanently deprive the owner of the property." *State v. Justice*, ___ N.C. App. ___, ___, 723 S.E.2d 798, 801 (2012) (citation, quotation

marks, and brackets omitted). "[A]n indictment for larceny which fails to allege the ownership of the property either in a natural person or a legal entity capable of owning property is defective." *State v. Abbott*, ___ N.C. App. ___, ___, 720 S.E.2d 437, 440 (2011) (citation and quotation marks omitted).

Here, the indictment alleged two owners of the stolen property—Andy Stephens and Manna Baptist Church. Andy Stephens is a natural person, but the indictment does not allege that Manna Baptist Church is a legal entity capable of owning property. Failure to include such an allegation is normally fatal to the indictment. *See State v. Cathey*, 162 N.C. App. 350, 353, 590 S.E.2d 408, 410 (2004). The inclusion of Pastor Stephens as co-owner does not cure the omission here.

Where an indictment alleges two owners of the stolen property, the State must prove that each owner had at least some property interest in it. *See State v. Greene*, 289 N.C. 578, 585, 223 S.E.2d 365, 370 (1976) ("If the person alleged in the indictment to have a property interest in the stolen property is not the owner or special owner of it, there is a fatal variance entitling defendant to a nonsuit."); *State v. Burgess*, 74 N.C. 272, 273 (1876) ("If one is charged with stealing the property of A, it will not do to prove that he stole the joint property

of A and B."); *State v. Hill*, 79 N.C. 656, 659 (1878) (holding that where an indictment alleges multiple owners, the State must prove that there were in fact multiple owners). If one of the owners were incapable of owning property, the State necessarily would be unable to prove that both alleged owners had a property interest. Therefore, where the indictment alleges multiple owners, one of whom is not a natural person, failure to allege that such an owner has the ability to own property is fatal to the indictment. Consequently, the indictment here is fatally flawed and defendant's conviction for larceny must be vacated. *See Abbott*, ___ N.C. App. at ___, 720 S.E.2d at 441.

### III. Breaking or Entering a Place of Worship

Defendant next argues that the trial court erred in denying his motion to dismiss the charge of felony breaking or entering a place of worship because there was insufficient evidence of his intent to commit larceny therein. We agree.

> When ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. Any contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered. The trial court must decide only whether there is substantial evidence of each essential element of the offense charged and of the defendant['s] being the

> perpetrator of the offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. When the evidence raises no more than a suspicion of guilt, a motion to dismiss should be granted. However, so long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also permits a reasonable inference of the defendant's innocence.

*State v. Chillo*, 208 N.C. App. 541, 545, 705 S.E.2d 394, 397 (2010) (citation and quotation marks omitted).

A person commits the felony of breaking or entering a place of worship if he "[1] wrongfully breaks or enters [2] any building that is a place of religious worship [3] with intent to commit any felony or larceny therein." N.C. Gen. Stat. § 14-54.1(a) (2011). There are two lesser-included offenses to this charge: felony breaking or entering under N.C. Gen. Stat. § 14-54(a) (2011), which lacks the "place of religious worship" element, and misdemeanor breaking or entering under N.C. Gen. Stat. § 14-54(b) (2011), which lacks both the "place of religious worship" element and the intent element.

Defendant does not contend that the State failed to present sufficient evidence that he wrongfully entered a place of religious worship. He argues that the State failed to present sufficient evidence of intent to commit a larceny therein.

"Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." *Chillo*, 208 N.C. App. at 546, 705 S.E.2d at 398. "The intent with which an accused broke and entered may be found by the jury from evidence as to what he did within the [building]." *State v. Brewer*, 80 N.C. App. 195, 199, 341 S.E.2d 354, 357 (1986) (citation and quotation marks omitted). "For example, the intent to commit larceny may be inferred from the fact that defendant committed larceny." *Chillo*, 208 N.C. App. at 546, 705 S.E.2d at 398 (citation and quotation marks omitted). "Further, a defendant's possession of stolen goods soon after the theft is a circumstance tending to show him guilty of the larceny." *State v. Baskin*, 190 N.C. App. 102, 109, 660 S.E.2d 566, 572 (citation, quotation marks, and brackets omitted), *disc. rev. denied*, 362 N.C. 475, 666 S.E.2d 648 (2008). Finally, "[i]n the absence of a showing of a lawful motive, an intent to commit larceny may be reasonably inferred from an unlawful entry." *State v. Quilliams*, 55 N.C. App. 349, 351, 285 S.E.2d 617, 619, *cert. denied*, 305 N.C. 590, 292 S.E.2d 11 (1982); *see State v. McBryde*, 97 N.C. 393, 397, 1 S.E. 925, 927 (1887) (establishing that an inference of felonious intent may be made where a defendant breaks into a dwelling at night

with "no explanatory facts or circumstances"). However, this inference may be precluded by evidence of facts or circumstances that reveal an innocent reason for the defendant's entering into the building.[1]

> The presumption, or inference as it is more properly called, is one of fact and not of law. The inference derived from [an unlawful entry] is to be considered by the jury merely as an evidential fact, along with the other evidence in the case, in determining whether the State has carried the burden of satisfying the jury beyond a reasonable doubt of the defendant's guilt. Proof of [unlawful entry] by the State does not shift the burden of proof to the defendant but the burden remains with the State to demonstrate defendant's guilt beyond a reasonable doubt.

---

[1] *See, e.g.*, *State v. Cook*, 242 N.C. 700, 703, 89 S.E.2d 383, 385 (1955) (evidence sufficient to preclude inference where the defendant did not flee when discovered, explained that he was looking for a particular person, and left when requested), *State v. Moore*, 62 N.C. App. 431, 434, 303 S.E.2d 230, 232 (1983) (holding that there was sufficient evidence of innocent intent where both the State's and defendant's evidence showed that the defendant was coerced at knifepoint to enter), *State v. Humphries*, 82 N.C. App. 749, 751, 348 S.E.2d 167, 169 (1986) (holding that the evidence was sufficient to preclude inference where defendant believed house to be that of his girlfriend and nothing in the dwelling had been disturbed), *disc. rev. dismissed*, 320 N.C. 165, 357 S.E.2d 359 (1987), *State v. Lamson*, 75 N.C. App. 132, 133, 135, 330 S.E.2d 68, 68, 70 (holding that the evidence was sufficient to preclude inference where he tried to enter the house drunk and was staying at the neighboring house), *disc. rev. denied*, 314 N.C. 545, 335 S.E.2d 318 (1985); *see also*, *State v. Keitt*, 153 N.C. App. 671, 675-76, 571 S.E.2d 35, 37-38 (2002) (discussing the rebuttable *McBryde* inference and holding that evidence of intoxication alone is insufficient to rebut it), *aff'd per curiam*, 357 N.C. 155, 579 S.E.2d 250 (2003).

*State v. Fair*, 291 N.C. 171, 173, 229 S.E.2d 189, 191 (1976) (citations omitted).

Here, defendant admitted entering the church, but he explained that he entered to seek sanctuary, drink water, and pray. Defendant testified that the door to the church was unlocked when he arrived there. He stated that he saw that the door was slightly ajar and that a "sliver of light" was coming from within. He testified that he did not enter intending to steal anything and did not in fact steal anything. None of the State's evidence contradicts this testimony. Pastor Stephens testified that when the church secretary arrived on the morning of 20 August 2012, she found the front door unlocked. There were no signs of forced entry. Pastor Stephens admitted that the door could have been left unlocked accidentally after Wednesday night services, which ended around 9 p.m.

Defendant testified that he arrived at the church after 12 a.m. and set back out on the road around sunrise, but that shortly thereafter he began having chest pains and called 911. Mr. Cobb, the EMT who responded to defendant's call, testified that he was dispatched around 6:30 a.m. At the time, defendant was near an open field at the intersection of Burke Road and River Hill Road. The church is also located on Burke Road,

though its distance from the intersection is not clear from the testimony. When Mr. Cobb arrived, defendant was sitting on the back of a fire truck, which had responded first. Defendant looked disheveled and worn out. He had worn through the soles of his shoes. Defendant explained to Mr. Cobb that he had been wandering all night. Mr. Cobb testified that defendant was not carrying anything and did not have anything in his pockets.

Four days later, after Sunday services, Pastor Stephens noticed that an audio receiver, some microphones, and some audio cords were missing. These items were kept at various places around the church, including by the sound system, in the front of the church, and in the baptistery changing area, where defendant's wallet was found. Investigator Woosley checked a pawn shop database, but found no reports of items matching those missing from the church. Neither the officers nor any of the church staff searched the area around the church for the missing items. The items were never recovered.

When Investigator Woosley spoke with defendant at the Cleveland County Detention Center, defendant admitted that he had been to the church, but stated that he could not remember what he had done there. Defendant explained that he was a religious man and that "he had been on a spiritual [journey]."

He admitted having periodic blackouts related to his mental health issues and medications, but never admitted taking anything from the church or entering the church with intent to steal.[2] He said that he remembered going to the church and that the church door was open when he got there, but that he did not remember doing anything wrong once inside.

We conclude that these facts are sufficient "explanatory facts and circumstances" to preclude the *McBryde* inference. *See McBryde*, 97 N.C. at 397, 1 S.E. at 927; *Lamson*, 75 N.C. App. at 135, 330 S.E.2d at 70. Unlike in the cases finding the evidence sufficient to infer intent from the breaking or entering alone, there was evidence of innocent intent and no evidence that defendant was discovered in the church and fled from the building. *Cf. State v. Hill*, 38 N.C. App. 75, 78, 247 S.E.2d 295, 297 (1978). Instead, he called 911 from a location near the church. There was no evidence that defendant attacked occupants of the building. *Cf. State v. Accor*, 277 N.C. 65, 73, 175 S.E.2d 583, 588-89 (1970). There was no evidence that

---

[2] Defendant did admit that he had previously broken into a residence, but there was no evidence that this offense had anything to do with the church, that it was in the same vicinity, or that it was uniquely similar to the facts here. Indeed, when the State attempted to elaborate on this other offense in rebuttal, the trial court excluded this evidence under Rule 403.

defendant entered the building in a manner consistent with criminal intent—he entered through an unlocked front door. *Cf. State v. Hedrick*, 289 N.C. 232, 236, 221 S.E.2d 350, 353 (1976) (applying the *McBryde* presumption where the defendant pushed in a windowpane to retrieve a key, cut telephone wires, was familiar with the layout of the house, and fled when confronted); *Quilliams*, 55 N.C. App. at 351, 285 S.E.2d at 619 (concluding that there was sufficient evidence to survive a motion to dismiss where the defendant broke through a window, cut through a screen, and fled when discovered).

"Inference may not be based on inference. Every inference must stand upon some clear and direct evidence, and not upon some other inference or presumption." *Fair*, 291 N.C. at 173-74, 229 S.E.2d at 190 (citation and quotation marks omitted). Here, there was no evidence to contradict the innocent "facts and circumstances" offered by defendant. Therefore, the State was not entitled to rely on the *McBryde* inference to meet its burden.

Absent such an inference, we conclude that the evidence was insufficient, even taken in the light most favorable to the State, to show that defendant entered the church with intent to commit larceny. *Brewer*, 80 N.C. App. at 199, 341 S.E.2d at 357.

The church was unlocked for over three hours before defendant arrived. There was no evidence of forced entry. Several hours later, when Mr. Cobb encountered defendant on the same road as the church, defendant was not carrying anything. None of the church staff noticed that the items were missing until four days later, after Sunday services. There was no evidence that defendant tried to sell the items in local pawn shops. There was no evidence that defendant touched the audio system. In fact, the State presented no evidence that showed defendant ever possessed the missing items. *Cf. Chillo*, 208 N.C. App. at 546, 705 S.E.2d at 398; *Baskin*, 190 N.C. App. at 109, 660 S.E.2d at 572.

We hold that the State failed to meet its burden as to the intent element of felonious breaking or entering a place of worship. The evidence is insufficient to support a reasonable inference that defendant entered the church with intent to commit larceny. Taken in the light most favorable to the State, the evidence here "raises no more than a suspicion of guilt." *Chillo*, 208 N.C. App. at 545, 705 S.E.2d at 397. Therefore, the trial court erred in denying defendant's motion to dismiss at the close of all the evidence. *See id.*

Although there was insufficient evidence to sustain a conviction for felonious breaking or entering, as defendant concedes, there was ample evidence to support a conviction for misdemeanor breaking or entering. Therefore, we remand for entry of judgment on that offense and resentencing. *See State v. Dawkins,* 305 N.C. 289, 291, 287 S.E.2d 885, 887 (1982) (remanding for entry of judgment on misdemeanor breaking or entering where evidence was sufficient to support that offense, but not felonious intent).

## IV.  Ineffective Assistance of Counsel

Defendant next argues that he received ineffective assistance of counsel because his trial counsel failed to move *in limine* to exclude evidence that he had been arrested on an unrelated breaking or entering charge and initially failed to object to introduction of that evidence at trial. When his trial counsel did object to the State's attempt to call a witness in rebuttal to testify regarding the other charge, the trial court sustained the objection under Rule 403.

> To prevail in a claim for [ineffective assistance of counsel], a defendant must show that his (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense, meaning counsel's errors were so serious as to deprive the defendant of a

> fair trial, a trial whose result is reliable.

*State v. Smith*, ___ N.C. App. ___, ___, 749 S.E.2d 507, 509 (2013) (citation and quotation marks omitted).

The relevance of the objected-to evidence here relates—at very best—to the defendant's intent to commit larceny upon entering the church. Given our disposition of the breaking or entering charge, defendant cannot show prejudice from any failure of his trial counsel to object to this evidence. Therefore, he is not entitled to a new trial.

## V. Conclusion

For the foregoing reasons, we conclude that the trial court was without jurisdiction to try defendant on the larceny charge and that it erred in denying defendant's motion to dismiss the felony breaking or entering charge. Because there was sufficient evidence to sustain a conviction for misdemeanor breaking or entering, we remand for entry of judgment and resentencing on that offense.

VACATED, in part; REVERSED, in part; and REMANDED.

Judges STEPHENS and MCCULLOUGH concur.