An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-346

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

STATE OF NORTH CAROLINA

v.                                          Orange County
                                            Nos. 12 CRS 245, 53107
BABE ANDREW THORPE, JR.


        Appeal by defendant from judgment entered 5 September 2013

by Judge Michael J. O'Foghludha in Orange County Superior Court.

Heard in the Court of Appeals 25 August 2014.


        *Attorney General Roy Cooper, by Assistant Attorney General
        Elizabeth N. Strickland, for the State.*

        *M. Alexander Charns, for defendant-appellant.*


        CALABRIA, Judge.


        Babe Andrew Thorpe, Jr. ("defendant") appeals from a

judgment entered upon jury verdicts finding him guilty of

felonious breaking or entering ("B&E") and larceny after B&E

that includes his guilty plea to attaining habitual B&E status.

We find no error, but remand for the correction of a clerical

error.

On 6 November 2012, by 8:00 a.m., both Kathryn Flynn ("Mrs. Flynn") and her husband left their residence (the "Flynns' residence") on Old North Carolina Highway 10 in Hillsborough, North Carolina. Between 12:00 p.m. and 2:00 p.m., Kim Rider ("Rider") arrived at the Flynns' residence to walk their dog. Rider had a key to the residence, and found everything "normal" at that time.

At 2:30 p.m., Orange County Sheriff's Office Investigator Doug Koehler ("Investigator Koehler") observed a burgundy Explorer ("the vehicle") parked in the driveway of a vacant American Legion building on Old North Carolina Highway 10, located two-tenths of a mile from the Flynns' residence. Investigator Koehler drove into the driveway facing the vehicle since the driver of the vehicle had backed it into the driveway facing the highway. As Investigator Koehler checked the vehicle's license tag to determine the owner, defendant, approached him.

Investigator Koehler noticed the front pockets of defendant's sweatshirt "were weighted down" with loose change. Defendant's response to Investigator Koehler's question regarding the change was that a lady down the street had paid him in change for raking leaves, but defendant did not know how

much change he had in his pockets. Defendant was also unable to tell Investigator Koehler the amount he had charged to perform the task. When Investigator Koehler asked defendant to show him where he had raked the leaves, defendant "became very loud saying, '[T]ake me to jail. I have a lawyer. . . . You can search me.'" With defendant's consent, Investigator Koehler performed a pat-down search.

In defendant's back pocket, Investigator Koehler found a coin bearing the name Louis Braille "in a hard plastic container[.]" Investigator Koehler obtained defendant's permission to search the vehicle and found two women's rings beside the gear shift on the center console. There were clear stones in the setting of one of the rings, while the other was set with clear and colored stones. Defendant told Investigator Koehler that the rings belonged to his girlfriend. Investigator Koehler also noticed loose change on the back seat of the vehicle which was similar to the change in defendant's pockets because it was "all silver. There were no pennies[.]"

After canvassing the residences in the area without finding any signs of a forced entry, Investigator Koehler allowed defendant to leave. Investigator Koehler then spoke with

several residents in the area, and discovered that none of them had hired defendant to rake leaves.

At 6:00 p.m., when Mrs. Flynn returned home, she discovered that her house had been "ransacked." A limited-release Louis Braille commemorative coin encased in a hard plastic container and two antique rings set with diamonds and rubies were missing from the residence. Mrs. Flynn also observed that a coin jar containing nickels, dimes, and quarters had been emptied, while a vase full of pennies was undisturbed. The next day, 7 November 2012, Investigator Koehler learned that several items and coins had been stolen from the Flynns' residence that were similar to those he had observed in defendant's possession the previous afternoon.

Defendant was subsequently arrested and charged with felonious B&E, larceny after B&E, and possession of stolen property. At trial, Investigator Koehler testified for the State regarding his encounter with defendant, that defendant had been walking from the direction of the Flynns' residence, and the items defendant possessed. After all the evidence had been presented, defendant made an unsuccessful motion to dismiss. The jury returned verdicts finding defendant guilty of all offenses. Defendant then pled guilty to the status offense of

habitual B&E and stipulated to the aggravating factor that he committed the offenses while on pretrial release. The trial court arrested judgment on the possession of stolen goods offense and consolidated defendant's remaining offenses for judgment. The trial court then sentenced defendant to a minimum of 36 months and a maximum of 56 months in the custody of the North Carolina Division of Adult Correction. Defendant appeals.

Defendant argues that the trial court erred in denying his motion to dismiss. Specifically, defendant contends that the State failed to present substantial evidence of his identity as the perpetrator. We disagree.

In reviewing the denial of defendant's motion to dismiss, this Court must determine whether "there is substantial evidence (1) of each essential element of the offense charged, and (2) that defendant is the perpetrator of the offense. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Key*, 182 N.C. App. 624, 628-29, 643 S.E.2d 444, 448 (2007) (citations and quotation marks omitted). We consider "the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence."

*State v. Wood*, 174 N.C. App. 790, 795, 622 S.E.2d 120, 123 (2005).

"The essential elements of larceny are that the defendant: 1) took the property of another; 2) carried it away; 3) without the owner's consent; and 4) with the intent to deprive the owner of the property permanently." *State v. Osborne*, 149 N.C. App. 235, 242-43, 562 S.E.2d 528, 534 (2002) (citation omitted). Larceny committed pursuant to a breaking or entering is a felony. N.C. Gen. Stat. § 14-72(b)(2) (2013). "Any person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon." N.C. Gen. Stat. § 14-54(a) (2013). "[T]he intent to commit larceny may be inferred from the fact that [the] defendant committed larceny." *State v. Chillo*, 208 N.C. App. 541, 546, 705 S.E.2d 394, 398 (2010) (citation omitted).

Where there is only circumstantial evidence of B&E or larceny, the State must rely on the doctrine of recent possession. *State v. Maines*, 301 N.C. 669, 673, 273 S.E.2d 289, 293 (1981). "For the doctrine of recent possession to apply, the State must show: (1) the property was stolen, (2) defendant had possession of the property, subject to his control and disposition to the exclusion of others, and (3) the possession

was sufficiently recent after the property was stolen[.]" *State v. McQueen*, 165 N.C. App. 454, 460, 598 S.E.2d 672, 677 (2004). "The possession, in point of time, should be so close to the theft as to render it unlikely that the possessor could have acquired the property honestly." *State v. Jackson*, 274 N.C. 594, 597, 164 S.E.2d 369, 370 (1968). "Under the doctrine of recent possession, possession of recently stolen property raises a presumption that the possessor stole the property." *State v. Lee*, 213 N.C. App. 392, 395, 713 S.E.2d 174, 177 (2011). "Non-unique property may be identified by reference to characteristics other than its appearance:  the assemblage or combination of items recovered, the quantity of items recovered, and the stamps and marks on items recovered." *Id.* at 395, 713 S.E.2d at 177.

In the instant case, the State presented evidence that Mrs. Flynn returned home to a ransacked house and discovered her rings and coins were stolen from her residence. Investigator Koehler encountered defendant, who had possession of Mrs. Flynn's property without her consent and with the intent to deprive her of her property permanently. Investigator Koehler noticed defendant was on foot walking from the direction of the Flynns' residence to his vehicle, which was parked on vacant

property located two-tenths of a mile from the Flynns' residence. Defendant's possession of Mrs. Flynn's property was close to the time that Rider had found the Flynns' residence undisturbed.

Defendant contends that the State failed to prove that the coins and rings found in his possession were the same items stolen from the Flynns' residence. Defendant notes that the "unknown number of U.S. coins" removed from Mrs. Flynn's coin jar were indistinguishable from "millions of other coins in circulation." Defendant further characterizes Investigator Koehler's description of the rings in the vehicle as too "generic" to identify them as Mrs. Flynn's rings. Absent any other evidence linking him to the larceny at the Flynns' residence, defendant insists "[t]here was nothing save conjecture" to establish his possession of the stolen property. Defendant is mistaken.

In defendant's possession were a substantial quantity of "all silver" loose change, a commemorative Louis Braille coin encased in plastic, and two women's rings set with stones – the very types of items missing from Mrs. Flynn's "ransacked" residence. The likelihood that defendant could have acquired this precise combination of objects honestly, and so close to

the Flynns' residence at the time Investigator Koehler observed him, is unlikely. *See Jackson*, 274 N.C. at 597, 164 S.E.2d at 370. Although Mrs. Flynn's property was a combination of unique property (the rings and the Louis Braille commemorative coin) as well as non-unique property (the coins), the coins could be identified by reference to characteristics other than their appearance, such as "the assemblage or combination of items recovered[.]," *Lee*, 213 N.C. App. at 395, 713 S.E.2d at 177. The coins were identified by the fact that they were "all silver . . . . no pennies[.]" Mrs. Flynn reported that the empty coin jar had contained nickels, dimes, and quarters and a vase full of pennies was undisturbed. Therefore, it was unlikely that defendant could innocently be in possession of Mrs. Flynn's recently stolen unique rings in combination with the coins. Defendant's possessing the property raises the presumption that defendant was the perpetrator who stole the property. *Id*.

Viewing the evidence in the light most favorable to the State, the State presented substantial circumstantial evidence that Mrs. Flynn's stolen property was the property Investigator Koehler observed in defendant's possession on the afternoon of the larceny. Pursuant to the doctrine of recent possession, the

State presented substantial evidence from which the jury could infer defendant's guilt. Defendant's argument is overruled.

Although we find no error in defendant's trial, there is a clerical error in the section designated for the trial court's findings on the judgment indicating that defendant was sentenced as an habitual felon. Since the trial court found defendant attained the status of an habitual breaking and entering status offender, and although defendant was properly sentenced as attaining the status of an habitual breaking and entering offender, the judgment needs to be corrected. We remand for correction of this clerical error.

No error; remanded for correction of clerical error.

Judges GEER and McCULLOUGH concur.

Report per Rule 30(e).