An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-817

Filed 6 August 2025

Duplin County, Nos. 20CRS050582-300, 20CRS050583-300, 20CRS050611-300

STATE OF NORTH CAROLINA

v.

WILLIE MICHAEL TILLMAN, JR., Defendant.

Appeal by defendant from judgments entered 1 September 2023 by Judge George R. Hicks, III in Superior Court, Duplin County. Heard in the Court of Appeals 18 March 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Whitney N. Shaffer, for the State.*

> *Ryan Legal Services, PLLC, by John E. Ryan III, for defendant-appellant.*

STROUD, Judge.

Defendant appeals from a judgment entered 1 September 2023. Defendant argues the trial court erred in denying his motion to dismiss the charge of felony breaking or entering a motor vehicle as the State did not present sufficient evidence Defendant intended to permanently deprive the owner of the tow strap when he took it from the toolbox. As the evidence was sufficient to reach the jury, we conclude there was no error.

## I.    Background

The State's evidence tended to show that on 25 March 2020, Master Trooper John Gurganus of the North Carolina State Highway Patrol responded to a call of a vehicle in a ditch in front of Warsaw Heating and Air, a business in Warsaw, North Carolina. When Trooper Gurganus arrived, he saw a black Chevrolet Tahoe in the ditch and a burgundy Ford Expedition "in front of it with a tow strap hooked between them." Defendant was alone outside the Ford Expedition. Defendant said the Tahoe belonged to him and the Expedition belonged to his friend; Defendant stated his friend lived nearby and let Defendant take the Expedition to try to pull his vehicle out of the ditch. Trooper Gurganus testified he told Defendant "with the strap that he had, [he] was pretty confident it was not going work, and [he] told him that he was going to have to get somebody else." Defendant left the scene in the Expedition, got his father, and returned to pull the Tahoe from the ditch. When Defendant returned, Trooper Gurganus saw him park the Expedition in the parking lot at Warsaw Heating and Air. Trooper Gurganus had another call pending and observed Defendant "was not hurt, [and] there was not a thousand dollars worth of damage, [so] there was no reason . . . to do a report[.]" Trooper Gurganus also did not believe Defendant to be impaired so he "moved on."

Curtis Boone, who was employed at Warsaw Heating and Air on the date of this incident, testified that the Expedition did not belong to Defendant but to the owner of Warsaw Heating and Air, Doug Brinson. Mr. Boone also testified he owned

a 1973 GMC truck and that he left the truck in the parking lot of Warsaw Heating and Air overnight. Upon arriving at work the morning of 25 March, Mr. Boone noticed his GMC truck "had been moved and [the] hood was up, had been up." Mr. Boone kept ratchet straps and tow straps in a toolbox in the bed of the truck. Mr. Boone testified that the ratchet straps and tow straps were missing from the toolbox. He also noticed tire marks around the truck on the ground and "followed [the] truck tire marks through the mud . . . all the way back where the car was in the ditch, and that's where the [ratchet] straps were at, broke laying on the ground." Mr. Boone also noticed "spin marks" "where [Defendant] tried to pull the car out." Mr. Boone testified that he never got the tow straps back.

Later that morning, Trooper Gurganus again responded to a call at Warsaw Heating and Air to speak with Mr. Boone. Trooper Gurganus told Mr. Boone to file a report in Kenansville and then went to the Warsaw Police Department to ask for help in locating the black Tahoe he had seen earlier with Defendant. Trooper Gurganus was notified around 10:30 a.m. by Officer Maury Camron of the Warsaw Police Department of Defendant's location. Trooper Gurganus approached Defendant and began talking to him and Defendant explained why he was using the vehicles. Defendant explained to Trooper Gurganus that "he didn't mean any harm and that he was just trying to get his vehicle out."

On 7 June 2021, Defendant was indicted in file number 20 CRS 50582 for one count of felony breaking or entering a motor vehicle for breaking into the GMC truck,

one count of misdemeanor larceny of the tow straps that were in the GMC truck, and one count of misdemeanor injury to personal property for damage to the ratchet straps.[1] The indictment for breaking or entering into a motor vehicle specifically stated that Defendant "did break and enter a motor vehicle, a 1973 GMC Truck . . . with the intent to commit larceny therein." Trial began on 28 August 2023. At the close of the State's evidence, Defendant moved to dismiss all charges arguing the State failed to present evidence of every element of every charged offense. This motion was denied. Defendant renewed his motion at the close of all evidence. On 1 September 2023, the jury found Defendant guilty of all charges. After the jury verdict, Defendant renewed his motions, which were denied. The trial court consolidated the charges of felony breaking or entering of a motor vehicle, misdemeanor larceny, and injury to real property into a single judgment. Defendant gave oral notice of appeal in open court.

## II. Analysis

Defendant argues the trial court erred in denying his motion to dismiss the breaking or entering charge based on insufficient evidence of intent to commit larceny since the State failed to present sufficient evidence that Defendant intended to

---

[1] Defendant was also indicted for several additional crimes in file numbers 20 CRS 50583 and 20 CRS 50611. However, the only issue Defendant raises on appeal is to the elements of breaking and/or entering a motor vehicle in file number 20 CRS 50582. Thus, our discussion will be limited to that charge.

permanently deprive Mr. Boone of the tow straps at the time Defendant took them from the toolbox of Mr. Boone's 1973 GMC Truck.

> Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo. The question for a court on a motion to dismiss for insufficient evidence is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied. Substantial evidence is the same as more than a scintilla of evidence.

*State v. Tucker*, 380 N.C. 234, 236-37, 867 S.E.2d 924, 927 (2022) (citations and quotation marks omitted). Further, while "[s]ubstantial evidence is the same as more than a scintilla of evidence[,]" "the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence." *Id.* at 237, 867 S.E.2d at 927. All evidence must be reviewed in the light most favorable to the State, "giving the State the benefit of all reasonable inferences." *Id.* "Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980).

The elements of breaking or entering a motor vehicle under North Carolina General Statute Section 14-56 are: "(1) . . . a breaking or entering by the defendant; (2) without consent; (3) into a motor vehicle; (4) containing goods, wares, freight, or anything of value; and (5) with the intent to commit any felony or larceny therein." *State v. Jackson*, 162 N.C. App. 695, 698, 592 S.E.2d 575, 577 (2004) (emphasis

omitted); *see also* N.C. Gen. Stat. § 14-56 (2023). "The essential elements of larceny are that the defendant (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of his property permanently." *State v. Campbell*, 373 N.C. 216, 221, 835 S.E.2d 844, 848 (2019); *see also* N.C. Gen. Stat. § 14-72 (2023).

"Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." *State v. Chillo*, 208 N.C. App. 541, 546, 705 S.E.2d 394, 398 (2010) (citation omitted). Intent to commit a larceny "may be inferred by demonstrating that [the] defendant did not intend to return the property and was indifferent as to whether the owner ever recovered the property." *State v. Kemmerlin*, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002) (citations omitted). This Court has held that a defendant's intent to permanently deprive an owner of property may properly be inferred from the surrounding circumstances. *See, e.g.*, *State v. Jackson*, 75 N.C. App. 294, 297-98, 330 S.E.2d 668, 670 (1985) (concluding that abandonment of a stolen vehicle was properly inferred to be evidence of the defendant's intent to permanently deprive the owner of the vehicle); *see also Kemmerlin*, 356 N.C. at 473, 573 S.E.2d at 889 (inferring intent where the defendant abandoned the vehicle near the crime scene).

Here, Defendant argues there is insufficient evidence to establish intent at the time of his breaking and entering as he only "intended to temporarily use the straps" and "despite his best intentions did not return the straps[.]" Trooper Gurganus stated

that Defendant "said he did not mean any harm and that he was just trying to get his vehicle out" from the ditch. Even considering Defendant's self-serving statement to Trooper Gurganus that he intended to return the straps, the trial court was required to view the evidence in the light most favorable to the State with every reasonable inference drawn in the State's favor. *See Smith*, 300 N.C. at 78-79, 265 S.E.2d at 169. And this Court may not weigh the credibility of witnesses or weigh the evidence; the jury has that role. *See id.*

Defendant relies on *State v. Kirkpatrick*, 34 N.C. App. 452, 238 S.E.2d 615 (1977), which states "the intent at the time of the breaking or entering must be established by the evidence to convict a defendant of felony breaking or entering." *Id.* at 455, 238 S.E2d at 618. In *Kirkpatrick*, three defendants entered a garage, left, and drove their vehicle out of view of the garage; two defendants then reentered the garage to remove a C.B. radio from the victim's automobile. *See id.* This Court concluded that the "State's evidence would justify the jury's finding[,]" of felony breaking or entering of a motor vehicle in that the defendant entered the victim's garage for 30 seconds, tried to remove the C.B. radio from the automobile leaving his fingerprint on the dashboard, returned to the defendant's car and drove it while two defendants returned to the garage where they successfully removed the C.B. radio. *Id.* While *Kirkpatrick* is factually distinguishable from the present case, the same reasoning applies here. Based on Defendant's actions, the jury could infer Defendant's intent.

Here, the State's evidence showed Defendant went to Warsaw Heating and Air and took the tow straps and ratchet straps from the GMC pickup truck belonging to Mr. Boone. Defendant used the tow straps to retrieve his vehicle from the ditch but did not return them; this tends to show that Defendant intended to deprive the owner of any further use of the tow straps. Defendant claimed he had intended to return the tow straps after Trooper Gurganus went to investigate the missing items, hours after the initial interaction when the Tahoe was in the ditch. The evidence, viewed in the light most favorable to the State, was sufficient for the jury to infer that Defendant had the intent to permanently deprive Mr. Boone of the tow straps at the time he committed the breaking or entering of the vehicle. *See State v. Barts*, 316 N.C. 666, 690, 343 S.E.2d 828, 843-44 (1986) (explaining that "the intent to permanently deprive an owner of his property could be inferred where there was no evidence that the defendant ever intended to return the property, but instead showed a complete lack of concern as to whether the owner ever recovered the property" (citation omitted)). This argument is without merit.

## III. Conclusion

We conclude the trial court did not err in denying Defendant's motion to dismiss based on insufficiency of the evidence.

NO ERROR.

Judges ZACHARY and COLLINS concur.

Report per Rule 30(e).