STROUD, Judge.
Defendant Rachel McAlister ("defendant") appeals from her conviction of possession of a firearm by a felon and habitual felon status. On appeal, defendant argues that the trial court erred by denying defendant's motion to suppress and by not properly instructing the jury on several issues, including constructive possession and entrapment. Because defendant failed to object at trial to evidence about Lieutenant Higgins's conversation with her and has not argued plain error or requested review under N.C. Rules of Appellate Procedure Rule 2 on appeal, she has waived review of the trial court's denial of her motion to suppress. Additionally, as the trial court properly instructed the jury on constructive possession and the evidence showed that defendant possessed the gun both constructively and actually before Lieutenant Higgins asked her to retrieve it, we find no error in the trial court's judgment.
I. Facts
On 2 May 2016, Lieutenant Louis Ryan Higgins of the Yancey County Sheriff's Office was on duty and received a call there had been a theft from Price's Creek General Store. He arrived at the store and spoke with store employee Dustin Ballew. Mr. Ballew stated there had been a larceny of a handgun and it had been caught on surveillance video. Lieutenant Higgins viewed the surveillance video but did not recognize the individuals who had taken the gun. He did see, however, that the two suspects, a man and a woman, left the scene in a green Saturn vehicle with no gas cap which had "1,000 OBO" written in window chalk on the back window indicating the car was for sale. Officers searched on Facebook for similar cars and eventually found a post regarding a green Saturn vehicle positively identified as the one on the surveillance video. An individual-David Metcalf-commented on the post regarding the sale of the vehicle, and when officers went to his Facebook page, he was identified as the man captured in the surveillance video from the store. His Facebook page showed that he was in a relationship with a woman-defendant-who was positively identified as the woman in the surveillance video.
Lieutenant Higgins contacted the Avery County Sheriff's Office to locate defendant and Mr. Metcalf. Initially, officers could not locate them, but eventually they obtained a cell phone number and address. While officers were on their way to the address, they received a telephone call from defendant. Lieutenant Higgins suggested that defendant step outside to speak with him, and defendant walked out onto her front porch. After approaching the front porch, Lieutenant Higgins testified at trial[1] that he stated to defendant: "I'm going to do a lot of talking, you need to do a lot of listening; I need the gun that you stole from Price's Creek Store." Defendant began to speak, but Lieutenant Higgins interrupted her and said, "Before you say anything, ... [i]t's not a question of, you know, you don't know what I'm talking about or you didn't do it. I said, I've saw [sic] the surveillance footage of you taking the gun; I need you to get the gun now." Defendant went inside, retrieved the handgun, and handed it to Lieutenant Higgins.
Defendant was indicted by a grand jury on 23 May 2016 for the felony offenses of larceny of a firearm, possession of a firearm by a felon, and having attained the status of a habitual felon. Defendant filed a motion to suppress on 14 September 2016 requesting suppression of all evidence obtained on or about 2 May 2016 when defendant responded to questions from law enforcement. Defendant contended that she should have been read her Miranda rights before she was questioned and that because law enforcement failed to advise defendant of her rights, the evidence should have been excluded. The trial court denied defendant's motion before trial began.
The case proceeded to trial. At the close of the State's evidence, the trial court dismissed the charge of larceny of a firearm. The jury ultimately found defendant guilty of possession of a firearm by a felon and of being a habitual felon. After judgment and sentencing, defendant timely appealed to this Court.
II. Analysis
a. Motion to Suppress
First, defendant contends that the trial court erred by denying defendant's motion to suppress. But defendant has waived her right to review of this issue because she failed to object at trial and has not argued for plain error review or the invocation of Rule 2 on appeal.
Defendant filed a motion to suppress on 14 September 2016 requesting that the trial court suppress "[a]ll statements and actions if as well as items obtained from the defendant on or about May 2, 2016 ... in response to questions and requests by Yancey County Deputy." The trial court addressed the motion before defendant's trial and ultimately denied it. The trial court reasoned:
The defendant on this occasion was not in custody, certainly wasn't placed under arrest, nor was her freedom curtailed in any way. And specifically, her freedom wasn't curtailed to a degree associated with an arrest. Merely stating that the suspect may not be free to leave doesn't necessarily mean the suspect is in custody. There was no custodial interrogation. But contrary to the State's argument, indeed, requesting someone to go get the gun is indeed interrogation. Interrogation doesn't only include questioning; it would include other conduct that is reasonably likely to elicit an incriminating response. But in any event, there would need to be both, there would need to be a custodial interrogation for the motion to suppress to be granted, and that did not occur on this occasion.
No further objections or issues were raised by either defendant or the State, so the matter proceeded to trial.
At trial, Lieutenant Higgins testified about his interaction with defendant on the front porch on 2 May 2016, and defendant made no objections during this portion of his testimony. "[O]ur Supreme Court has held that a trial court's evidentiary ruling on a pretrial motion to suppress is not sufficient to preserve the issue of admissibility for appeal unless a defendant renews the objection during trial." State v. Hargett , 241 N.C. App. 121, 127, 772 S.E.2d 115, 120 (2015) (citation, quotation marks, and brackets omitted). Defendant did not renew her objection.
Furthermore, while a defendant may request plain error review on appeal of matters not properly preserved for review, defendant has not done so in this case-nor has defendant requested that we invoke our discretion under Rule 2 to review this issue. See, e.g., State v. Powell , --- N.C. App. ----, ----, 800 S.E.2d 745, 748 (2017) ("[O]ur Supreme Court has held that to the extent a defendant fails to preserve issues relating to his motion to suppress, we review for plain error if the defendant specifically and distinctly assigns plain error on appeal ." (Citation, quotation marks, and brackets omitted) (emphasis added) ). We hold that defendant has waived her right to review of this issue.
b. Constructive Possession Jury Instructions
Next, defendant argues that the trial court erred in instructing the jury on the theory of constructive possession. Defendant claims there was no evidence to support the State's theory of constructive possession and that the trial court's instruction denied defendant of a fair trial.[2]
At the end of defendant's trial, the State asked the trial court to instruct the jury on the theory of constructive possession. Defendant objected. The trial court ultimately instructed the jury regarding actual and constructive possession:
Now, possession of an article may be either actual or constructive. A person has actual possession of an article if the person has it on the person, is aware of its presence, and either alone or together with others, has both the power and intent to control its disposition or use. A person has constructive possession of an article if the person does not have it on the person but is aware of its presence, and has either alone or together with others both the power to control its disposition or use. The person's awareness of the presence of the article and the person's power and intent to control its disposition or use may be shown by direct evidence, or may be inferred from the circumstances.
"Properly preserved challenges to the trial court's decisions regarding jury instructions are reviewed de novo by this Court." State v. King , 227 N.C. App. 390, 396, 742 S.E.2d 315, 319 (2013) (citation and quotation marks omitted). See also State v. Marshall , 206 N.C. App. 580, 582, 696 S.E.2d 894, 896 (2010) ("When the appealing party properly objects to jury instructions at trial, we review the instructions as a whole in order to ascertain whether, in context, an erroneous instruction likely misled the jury.").
Under the theory of constructive possession, a person may be charged with possession of an item ... when he has both the power and intent to control its disposition or use, even though he does not have actual possession. Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession. However, unless the person has exclusive possession of the place where the [contraband is] found, the State must show other incriminating circumstances before constructive possession may be inferred.
State v. Davis , 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989) (citations and quotation marks omitted). See also Marshall , 206 N.C. App. at 582-83, 696 S.E.2d at 897 ("A person is in constructive possession of a thing when, while not having actual possession, he has the intent and capability to maintain control and dominion over that thing. As with other questions of intent, proof of constructive possession usually involves proof by circumstantial evidence." (Citations and quotation marks omitted) ).
Here, as the State points out, sufficient circumstantial evidence existed to support the contention that defendant was aware of the gun's presence and-together with her fiancé, David Metcalf-had the power and intent to control its disposition and use. Although defendant contends that she was unaware that Mr. Metcalf stole the gun from the store until she went back inside the house and confronted him, the surveillance video from Price's Creek Store showed defendant in possession of the gun. She had to reach over an open counter into a glass display to retrieve it.[3] Mr. Ballew testified this is not normally how customers get handguns from the display cases; typically, a store employee would reach into the display cases and retrieve the gun for the customer. Looking at this evidence in the light most favorable to the State, defendant actually possessed the gun when she removed it from the case and then constructively possessed it after she handed it to Mr. Metcalf. And defendant stipulated at trial that she was a felon prior to the date of the incident.[4]
When Lieutenant Higgins spoke with defendant on her front porch, he told her he needed the gun she stole from the Price's Creek Store. After she tried to speak, he interrupted her and reiterated that he needed her to get the gun now. Defendant then turned around, went back into the home and retrieved the weapon, and then returned and placed it in Lieutenant Higgin's hands. Given the overwhelming evidence, including both the surveillance video from Price's Creek Store and testimony at trial, the jury had more than enough evidence before it to support the inference that defendant constructively possessed the firearm.
We find no error with the trial court's instruction.
c. Plain Error
Finally, defendant argues that the trial court erred in failing to instruct that defendant could not be guilty of possession of a firearm by a felon if the jury determined that the only time she was in possession of the firearm was to retrieve the weapon at law enforcement's request. Because defendant did not request this instruction or object to the instructions as to possession on this basis at trial, defendant now requests we review for plain error.
[T]he plain error standard of review applies on appeal to unpreserved instructional or evidentiary error. For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity, or public reputation of judicial proceedings[.]
State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations, quotation marks, and brackets omitted).
Defendant acknowledges that she actually possessed the firearm at Price's Creek Store when she reached over the counter to retrieve it. And the evidence presented to the jury simply did not support an entrapment instruction.
Entrapment is the inducement of one to commit a crime not contemplated by him, for the mere purpose of instituting a criminal prosecution against him. To be entitled to an instruction on entrapment, the defendant must produce some credible evidence tending to support the defendant's contention that he was a victim of entrapment, as that term is known to the law. The evidence is to be viewed in the light most favorable to the defendant. The entrapment defense consists of two elements: (1) acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime, and (2) when the criminal design originated in the minds of the government officials, rather than with the innocent defendant, such that the crime is the product of the creative activity of the law enforcement authorities.
State v. Thomas , 227 N.C. App. 170, 172-73, 742 S.E.2d 307, 309 (2013) (citations, quotation marks, and brackets omitted).
Here, there was no evidence of any law enforcement officer engaging in persuasion, trickery, or fraud or that the "criminal design originated" with the law enforcement officers. Lieutenant Higgins directly asked defendant to return the stolen firearm-which made it clear that he considered the firearm as stolen at that point in time. He said nothing to trick defendant into possessing a firearm, and the crime did not originate with law enforcement's retrieval of the gun. The crime had already occurred when defendant physically removed the gun from the case at the store, or when defendant and her fiancé rode away from the store in the car, or when it was inside their home before Lieutenant Higgins arrived-or at all of these times. Defendant cannot meet the difficult burden of establishing plain error on this issue. We therefore find no error with the jury instructions.
III. Conclusion
We hold that the trial court did not err in its ruling denying defendant's motion to suppress or in its instructions to the jury.
NO ERROR.
Report per Rule 30(e).
Judges ELMORE and TYSON concur.

Lieutenant Higgins gave substantially similar-but not verbatim-testimony at the hearing on defendant's motion to suppress before trial began; this summary is based upon his trial testimony.

Defendant does not raise any argument regarding the instruction on actual possession of the gun.

Defendant did not provide a copy of the video to this Court, although the parties designated it as part of the settled Record on Appeal. The parties stipulated that "[a]ll exhibits and documents introduced at trial and all documents contained in the clerk file are to remain in the custody of the clerk's office of Yancey County and are to be made available upon request of the court or counsel." Neither party has raised any argument that the representations in the briefs regarding the video are incorrect, so there was no need for us to review the video. In fact, defendant's brief states that "[t]he video surveillance tended to show [defendant] briefly holding the firearm when she retrieved it from the display case and handed it to David Metcalf."

Defendant's stipulation was only in relation to the offense of felon in possession of a firearm, not the habitual felon charge.